IN THE

# SUPREME COURT OF ALABAMA,

NOVEMBER TERM, 1891,*

—AND—

NOVEMBER TERM, 1892.*

## Commercial Fire Insurance Co. *v.* Board of Revenue of Montgomery County.

*Proceeding by Insurance Company to be Relieved from Taxation on so much of its Capital Stock as is Invested in the Capital Stock of a Bank.*

1. *Definition of the capital stock of a corporation.*—The capital stock of a corporation is the sum fixed by the corporate charter as the amount paid in, or to be paid in, by the stockholders for the prosecution of the business of the corporation, and is a trust fund for the benefit and security of the creditors of the corporation.

2. *Capital stock of one corporation can not be invested in the capital stock of another corporation.*—A corporation can not, in the absence of express statutory authority, become an incorporator by subscribing for the capital stock of a new corporation; nor can it do this indirectly through persons acting as its agents.

3. *Insurance company not authorized to subscribe to the capital stock of another corporation.*—Section 1535, subdivision 7 of the Code, which provides that insurance companies may "invest their money in real or personal property, stocks or choses in action," does not authorize insurance companies to subscribe for and invest its capital stock in the capital stock of other corporations.

4. *Taxation; insurance company not relieved as to its capital stock invested in other corporations.*—An insurance company, which has invested a portion of its capital stock in the capital stock of another corporation, can not be relieved from the payment of taxes assessed against such part of its capital stock, on the ground that such portion is "invested in property which is otherwise taxable," as provided by section 453, subdivision 9, of the Code.

---

* The first 21 cases of this volume should have been published in earlier volumes, but were omitted through inadvertence or mistake.

1

[Commercial Fire Ins. Co. v. Board of Revenue Montgomery Co.]

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

The proceeding in this case was commenced by a petition filed by the Commercial Fire Insurance Company, addressed to the Board of Revenue of Montgomery County; and sought to have an assessment made by the tax assessor of Montgomery county against the petitioner reduced, by deducting from said assessment, among other items, $51,000.00 of the capital stock of the Commercial Fire Insurance Company, which was invested, as alleged in the petition, in the capital stock of the Bank of Montgomery. The petition was denied by the Board of Revenue, and the cause was carried to the Circuit Court by *certiorari*, where it was again denied. From this last judgment the present appeal is prosecuted; and its rendition is here assigned as error.

TOMPKINS & TROY, for appellants.

MOORE & FINLEY, *contra.*

STONE, C. J.—The appellant, the Commercial Fire Insurance Company, and the Bank of Montgomery, each of them, is a private corporation under the laws of this State. The capital stock of each of these corporations is one hundred thousand dollars. The purpose of the present proceeding, instituted by the insurance company, is to obtain relief from State and county taxes assessed against its capital stock, to the extent of fifty-one thousand dollars of such capital stock, on the following ground: "That said capital is invested as follows: $51,000 thereof in the capital stock of the Bank of Montgomery, a corporation organized under the general incorporation laws of the State of Alabama, authorized to do a banking business." The petition then sets up other exemptions claimed, but no question is raised on this appeal as to those other asserted exemptions. We will confine what we have to say to the one item of fifty-one thousand dollars, invested in the capital stock of the Bank of Montgomery.

The petition further avers "that its said capital stock was not worth on the first day of January, 1890, exceeding the sum of one hundred thousand dollars; that said stock held by it in the Bank of Montgomery was at that time worth par, and has been returned to said tax assessor by said bank for taxation at par. . . Petitioner claims that it was not bound to return for taxation said capital stock held by it in the Bank of Montgomery, . . that the same was

returned for taxation by the corporation issuing the same, and it was liable to be taxed, and the taxation thereon charged against the said corporation. And petitioner avers the fact to be that said corporation did return for taxation its capital stock as hereinbefore stated." Petition then averred that the tax assessor had refused to allow a credit to it of the $51,000 of its capital stock so invested in that amount of the capital stock of the Bank of Montgomery.

The petition from which we have copied was filed with the Board of Revenue of Montgomery County, and by that body disallowed. The contention was then carried by *certiorari* to the Circuit Court, and again the claim was disallowed. From that judgment the present appeal is prosecuted.

Under our revenue law—Code of 1886, § 453—it is provided, that "For the use of the State, and to raise revenue therefor, there is levied an annual tax of sixty cents on each hundred dollars in value, upon the following property: . . . . "9. The capital stock of all corporations, companies or associations created or existing under any law in force in this State, except such portions of the capital stock as may be invested in property which is otherwise taxed as property, the same to be paid by the corporation, company or association; but when such corporation, company or association pays the taxes in this chapter levied upon the shares into which its capital stock is divided, or the same is paid by the shareholders, such corporation, company or association shall only be required to pay the taxes levied on the real and personal estate owned by it, unless its investments are otherwise herein taxed." The word *only* appears to be redundant and misplaced in this section. The tax rate has been reduced since the adoption of the Code of 1886. See Sess. Acts 1888–9, pp. 42 and 61.

We have a general law in relation to insurance companies, commencing with section 1531 of the Code of 1886. Such companies are clothed with large and liberal powers.—Code, § 1535. Our general banking law is found in the chapter which commences with section 1521 of the Code of 1886. The powers of such banks are enumerated in section 1525. It will be seen that the two classes of corporations have very many powers in common. Each is required to have a capital stock subscribed in good faith of not less than fifty thousand dollars, of which not less than twenty-five thousand dollars must be actually paid in by the subscribers before the filing of the declaration preliminary to incorporation.—Code of 1886, §§ 1522, 1532.

What is capital stock of corporations, and why are they required to have a capital stock paid in?

"Capital stock is the sum fixed by the corporate charter as the amount paid in, or to be paid in by the stockholders, for the prosecution of the business of the corporation, and for the benefit of corporate creditors. The capital stock is to be clearly distinguished from the amount of property possessed by the corporation. . . At common law the capital stock does not vary, but remains fixed, although the actual property of the corporation may fluctuate widely in value, and may be diminished by losses, or increased by gains."—Cook on Stock & Stockholders, § 3.

"A stockholder has no legal title to the property or profits of the corporation until a dividend is declared, or a division made on the dissolution of the corporation."—*Ib.* § 4a.

"A stockholder in an insurance company has the same rights that a stockholder in any other corporation has." *Ib.* § 4a.

"A share of stock may be defined as a right which its owner has in the management, profits and ultimate assets of the corporation. By the Court of Appeals of New York it is said that 'the right which a shareholder in a corporation has, by reason of his ownership of shares, is a right to participate according to the amount of stock, in the surplus profits of the corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of its debts."—*Ib.* § 5.

In *Neiler v. Kelly*, 69 Penn. St. 403, Justice Sharswood said : "A share of stock is an incorporeal, intangible thing. It is a right to a certain proportion of the capital stock of a corporation—never realized except upon the dissolution and winding up of the corporation—with the right to receive, in the meantime, such profits as may be made and declared in the shape of dividends."

Questions have arisen on the liability of stockholders to pay for stock subscribed, the objection being urged that irregularity had intervened in the organization, either accidental, intentional, or fraudulent. In 2 Morse on Banks, § 669, replying to this objection, it is said : "This plea can not be sustained to the injury either of corporate creditors or of subsequent *bona fide* purchasers or holders of the stock, who have taken it without participation in, or knowledge of any illegality or fraud. · · It might avail, if the question lay only between the bank and the subscriber ; but the corporation in such cases is not regarded as the real or exclusive party in interest. It is rather a trustee for the

creditors; and they, who are, therefore, the real parties, are certainly not *in delicto*."

§ 671. "To the doctrine of trust must be referred the further principle that a subscription for bank stock can not be diminished after it is once made. So soon as it is legally complete it is an obligation from which even the directors can not grant the subscriber any absolution, either for the whole or for any part, which will avail him as against persons who were creditors of the corporation prior to the diminution. The directors do not represent these persons, and are authorized to discharge an indebtedness of which they are the real beneficiaries."

§ 672. "The doctrine that the stock subscriptions are in the nature of a trust fund for payment of corporate liabilities seems to be well established. From it results the principle that subscribers can not avail themselves of the statute of limitations in bar of the claims of creditors to have payments made. For the subscribers are chargeable with the trust, and though the corporation may never have seen fit to enforce it, yet the *cestuis* do not thereby lose their rights."—*Semple v. Glenn*, 91 Ala. 245; 2 Morawetz on Private Corp. §§ 787–8–9; *Wood v. Dummer*, 3 Mass. 308.

The foregoing quotations are made with a view of presenting clearly and fully the nature and object of capital stock in a corporation. As property it has peculiar attributes. Collectively it is the property of the corporation, while the ownership of the shares is in the shareholders. Sale and disposition of the shares by the several owners, is free and untrammelled, save as the law or by-laws of the corporation may have prescribed rules. Not so with the capital stock. That is a security or pledge the law exacts, as a condition on which it grants the corporate franchise— the right to incur liabilities, for the discharge of which no responsibility rests on any natural person. It is the indispensible condition on which the law-making power grants the franchise, because the law and public policy so declare. And the capital stock is a trust fund; a trust for the benefit and security of the corporation's creditors. The directory, or governing body of the corporation are trustees, charged with the duty of guarding the trust fund, and preserving it for the uses for which it was placed in trust. The uses are, *first*, to meet and discharge any liabilities and debts of the corporation which disaster may bring upon it; and, *second*, to restore to the shareholders, when the corporation is wound up, whatever of the capital stock and accumulated gains may remain on hand, after discharging the corporation's liabilities to creditors.

[Commercial Fire Ins. Co. v. Board of Revenue Montgomery Co.]

It is not intended to be affirmed that the governing board of the corporation is required to keep the capital stock unemployed in its locked vaults. It should be utilized with a view of making it productive in some line of investment, or operation, within the scope of its corporate powers. There is this limitation to its authorized use. It must be within the scope of the corporate powers, and must be done with reference to the interest and success of the corporation whose capital stock it is. When this is the case, there is fidelity in the execution of the trust.

If this trust fund be misapplied to objects or uses outside of the scope of the corporate powers, this is a breach of trust, and fastens a personal liability on those who perpetrate the wrong, commensurate with the injury, if any, caused by the misapplication. And persons receiving the trust fund so misapplied, knowing it to be such, make themselves trustees *in invitum*, and render themselves liable to the corporation whose funds are thus misapplied, or to the creditors of the corporation for any diminution the trust fund may suffer in the transaction.

Among the powers conferred on incorporated insurance companies by our statute are the following, embraced in Code of 1886, § 1535, subdiv. 7 : "To invest their money in real or personal property, stocks or choses in action, and to sell the same ; to lend money, discount bills, and secure the payment thereof ; to buy and sell exchange, and receive and pay out deposits." These are comprehensive powers. What is meant by the language, "To invest their money in stocks or choses in action, and to sell the same ?" Will it, or can it be contended that the authority to invest in stocks, confers the power to subscribe to the capital stock of another corporation in process of organization? And if it confers the authority to subscribe for and become a stockholder in another corporation, in what description of corporation may the insurance company become a stockholder ? The statute employs only the generic word stocks ; and that word, if it include bank shares, applies equally to shares in all private corporations. Can the insurance company invest its capital stock, and thus become a stockholder in any and every description of private corporation, at the mere will and pleasure of its governing body? The vast variety of corporations now in use and operation need not be referred to, to show to what extreme results this interpretation would lead. Railroads, telegraph lines, telephones, express companies, mining and manufacturing enterprises—these are only a few of the numerous subjects of incorporation

[Commercial Fire Ins. Co. v. Board of Revenue Montgomery Co.]

under the law. Can an incorporated insurance company under our statute subscribe for stock in the organization of each, all, or any of the numerous corporations now so common in human transactions? The statute has a different meaning.

Stocks—shares in corporations—have come to be, in a large degree, subjects of commercial dealing and speculation. The newspapers contain tables of the ruling prices of stocks, as their market value fluctuates. These notices refer to the shares of stock in organized corporations. Their sale neither increases nor diminishes the capital stock in the corporation; it neither adds to, nor takes from the corporation one dollar of its stock. It simply changes its ownership *pro tanto*. The capital remains in the corporation in tact, and the security it furnishes, and is intended to furnish, the creditors of the corporation remains unimpaired.

When we speak of capital stock of a corporation, we are understood to refer to the sum subscribed in its organization. When we speak of stock, we mean the certificates issued by the corporation to the shareholders, which certificates, like titles to property, furnish the evidence of ownership of the shares of stock. Capital stock is the aggregate of money or other valuable thing contributed, or paid into the common treasury, as a condition of the exercise of corporate functions, and a security for their faithful and prudent exercise. It is the property of the corporation, charged with a trust, it is true; but nevertheless, in its possession, and under its control. The stock, stocks or shares of stock do not belong to the corporation. They belong to the shareholders, and are exclusively under the individual control of the several owners. The stocks, which the statute authorizes insurance companies to invest their money in, can not mean capital stock owned and to be held by the corporation. This, we have seen, is a trust fund. It means the stock owned by stockholders, usually evidenced by stock certificates. Stock, as a subject of commercial dealing, is what the legislature meant in the statute we are interpreting. The very connection in which the word is used in the statute confirms this interpretation. "To invest their money in  ·   ·   ·  stocks or choses in action, and to sell the same," is the language employed. There is not even a comma between the words "stocks" and "choses in action," nor a shade of difference in the powers conferred as to each. The power to invest in and to sell is very appropriate language when applied to commercial dealings. It is very inapt, if the intention was to confer authority to subscribe for stock in the formation of another corporation.

[Commercial Fire Ins. Co. v. Board of Revenue Montgomery Co.]

The interpretation we have given to the present record, to the effect that the insurance company invested $51,000 of its capital stock in subscribing that amount of it to the capital stock of the Bank of Montgomery, when the latter corporation was being formed, is rested on the language of the petition for *certiorari*, which brings this case before us. The correctness of our interpretation is placed beyond controversy by the brief and argument of appellant's counsel. It is there in effect admitted, and attempted to be justified, that when the bank was being organized, the capital stock of the one was invested in the other, to the extent of the credit claimed. This, of course, means that, to that extent, the capital stock of the insurance company became the capital stock of the bank.

Cook on Stock and Stockholders, § 317 and notes, treats of the power of one corporation to subscribe for stock in another. It is there said: "An insurance company has no power or legal right to subscribe for stock in a savings bank and building association, nor to purchase stock in another insurance company." In section 316, the same author said: "A banking corporation has at common law no power to purchase or invest in another corporation, whether that other corporation be itself a bank or of a different business."

In 1 Morawetz on Corporations, §§ 431–2, the right of a private corporation, on common law principles, to deal in the stocks of another corporation is discussed, and the limited extent to which it can so deal is defined. It is not one of the direct grants of power with which it is clothed, but a mere incidental means for conserving some interests which become imperiled. It may accept them as security for the payment of money, and, when necessary, may receive them in payment of a doubtful debt. But this same learned author, in section 433, employs this language: "A corporation can not, in the absence of express statutory authority, become an incorporator by subscribing for shares in a new corporation; nor can it do this indirectly through persons acting as its agents or tools."

In treating this case, we must bear in mind the precise question we have in hand. The attempt was being made to collect the taxes off the capital stock of the Commercial Fire Insurance Company; the capital of that corporation, and nothing else.—Code, § 453, subdiv. 9. The tax is, by statute, levied on the capital stock of corporations. In the corporation's petition to be relieved of a part of the tax thus levied, it describes it as a tax on the capital stock. It

avers, "That said capital stock is invested, . . . $51,000 thereof in the capital stock of the Bank of Montgomery." The corporation owned its capital stock, and, presumptively at least, did not own the shares of its capital stock. Hence the propriety and reasonableness of the averment that it was so invested, and not shares in its capital stock, pretermitting, for the sake of argument, its want of corporate power to invest its capital stock. The exact and specific case made in the petition is, that the capital stock of one corporation— the thing itself—is invested in the *capital stock* of another corporation. And, it may be added, this averment was necessary, to give the petition a semblance of merit. Capital stock—the insurance company's capital stock—was the subject of the tax, and in order to maintain the discount or deduction claimed, it was necessary to aver and show that that specific subject of taxation—the capital stock—or some portion of it, had been "invested in property which is otherwise taxed as property." We are thus confronted with the question, can one and the same sum of money, at one and the same time, serve the purpose of capital stock for two corporations?

We have shown by the highest legal authority that the capital stock of a corporation is a trust fund for the security and benefit of the creditors of the corporation, and that the managing board fills the relation of trustee for its preservation and administration. Corporations, acting within the scope of corporate powers, fix no liabilty on their officers, or on any one else. They charge only the corporation. Hence the purpose and policy of requiring a capital stock, as security and indemnity of persons who become its creditors. The law-making power confers on them privileges— a franchise, a right to make contracts in its artificial name without fastening a liability on any natural person—and it exacts from them as a condition on which it grants this franchise—this privilege and power—that they place a capital stock in safe pledge for the security of their creditors. And this capital stock is a permanent investment, with no power in the shareholder to withdraw it, until the corporation is wound up and all its debts paid, and no power in the managing board to permit it to be withdrawn, at the expense of creditors. It is a trust fund in the corporation's treasury, to be used only in its interest, and whatever of profit or emolument it may yield belongs of right to the corporation, its creditors and shareholders. It must be kept within the corporation and under its control, to meet the purpose for which it was required to be raised and paid in. It is not

materially unlike any other pledge that is placed as a guaranty of faithful performance of debt or duty. It is a fixed pledge until the debt is paid, or the duty performed.

Such being the nature, the status of capital stock in a corporation, can one and the same fund supply this want and fill this condition for two corporations? The law required one hundred thousand dollars of capital stock, as a condition on which it granted the corporate franchise for that amount of capital to the Commercial Fire Insurance Company, and the same amount from the Bank of Montgomery as the condition on which it conferred a similar franchise on it. Will a single sum of one hundred thousand dollars meet and satisfy this double demand? The law does not grant acts of incorporation in the undoubting faith and trust that they will be profitably and successfully administered. If there was neither distrust nor doubt, no guaranty, no pledge, no capital stock paid in should be required. The law, basing its action on experience, requires this guaranty, this security, because human enterprises often miscarry. Let us suppose, that in the case before us disaster should overtake both corporations, and it should become necessary to exhaust the capital stock of each in the payment of its liabilities. Is it not manifest that the one hundred thousand dollars the law required as a pledge and guaranty from each company would not be forthcoming? Fifty-one thousand dollars of the sum could not meet the double demand of that sum from the respective creditors of the two companies. One dollar can not pay two.

Let us take a further step. If corporation No. 1 can, of its one hundred thousand dollars of capital stock, supply fifty-one of the hundred thousand dollars the law requires of corporation No. 2, and yet retain its one hundred thousand dollars of stock, no sound argument can be formulated why it could not furnish the bank with the whole hundred thousand dollars of capital with the same result. And if corporation No. 1 can, from its own capital, furnish the capital stock of corporation No. 2, why can not corporation No. 2 render the same service to corporation No. 3? And why can not this process be carried on indefinitely? Would not such proceedings be an utter subversion of the purpose and policy which require that corporations, as a condition of the franchise they ask to be clothed with, shall furnish this security for those with whom they propose to have dealings? These questions can receive but one answer, and that answer is, that corporations have no authority to subscribe their

[Commercial Fire Ins. Co. v. Board of Revenue Montgomery Co.]

own capital stock in the capital stock of another corporation in process of organization.

The claim set up by appellant in this case, as we have shown, is rested on the statutory authority given to insurance companies "to invest their money in real and personal property, stocks or choses in action, and to sell the same." This is the entire authority conferred; and, as we have shown, the power to subscribe for shares, and thus aid in the formation of another corporation, is not among the general, incidental or implied powers a corporation is clothed with. Unless such power is expressly granted, it does not exist. The governing body of a corporation does not act for itself, but for another—the corporation. The corporation is the principal, the governing board the agent. In the matter we have in hand, the power of such governing board is not distinguishable, on any sound legal principle, from that of an agent, or attorney in fact, constituted by private appointment. Neither can do acts binding on the principal beyond the scope of the power conferred; and the rule and principle for admeasuring the power of each must of necessity be the same. Now, let us suppose that A, a private person, by power of attorney, constitutes B his agent and attorney in fact, with power "to invest his (the principal's) money in real and personal property, stocks and choses in action, and to sell the same." Let us suppose further that under this power B should attempt to invest A's money in subscribing for shares in a projected, unorganized corporation. Would any one contend that the power of attorney had given him authority to do so? Most assuredly not.

When the attempt was made to invest the insurance company's capital stock in the bank's capital stock, the governing board did an act which was *ultra vires.* Failing to bind the corporation, did not the act, like all such attempts by trustees, simply bind the members of the board personally? They could not thereby invest the capital stock of the insurance company, for that was a trust fund. They were without power or authority to so invest it. And if, in the fluctuations of trade, it shall become necessary to resort to the capital stock of that company to meet its liabilities, could the plea that it had been invested in the capital stock of another corporation avail anything? To render such defense available, should not the attempted investment be such as the corporate authorities were authorized to make? "Capital stock does not vary, but remains fixed. . . . The directors do not represent these persons, [the creditors

[Overall et al. v. Taylor.]

of the corporation], and are not authorized to discharge an indebtedness of which they [the creditors] are the real beneficiaries." Each corporation being organized on the basis of one hundred thousand dollars of capital stock, should a crisis arise which calls for that stock, would not the governing board be required to account for it and produce it, unless they can show it has been invested in something else, in which their corporate powers authorized them to invest it?

Not having invested the money in any thing they were authorized to invest it in, is it not the sentence of the law that they made no investment whatever? And if the money is not found in the vault of the corporation, are not the directors personally liable for it? The law and public policy estop each corporation from denying it has a seperate capital stock of one hundred thousand dollars, unless it is shown that all, or some portion of it has been "invested in property which is otherwise taxed as property," and that such investment was within the scope of its corporate power.

It follows that the insurance company is not entitled to the credit claimed.

Affirmed.

McClellan, J., and Walker, J., dissenting.