No. 29,903.

E. C. Ryan, as Executor, etc., *Plaintiff*, v. The Tax Commission of The State of Kansas et al., *Defendants*.

No. 29,924.

George MacKinnon, *Plaintiff*, v. The Tax Commission of The State of Kansas et al., *Defendants*.

(294 Pac. 938.)

Opinion filed January 10, 1931.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, V. V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the plaintiffs.

*O. R. Stites,* county attorney of Lyon county, for the defendants.

*C. B. Randall,* of Topeka, for the state tax commission.

The opinion of the court was delivered by

Burch, J.: These actions are in form actions of mandamus, and relate to taxation of classes of building and loan association shares.

Ryan, as executor, owns rural-credit shares issued by the Mutual Building and Loan Association of Emporia, pursuant to the provisions of R. S. 17-1052 to R. S. 17-1058, inclusive. Ryan contended his shares were exempt from taxation, but the assessor, acting under instructions from the tax commission, assessed the shares at their withdrawal value, $1,440. MacKinnon owns twenty-five shares issued by the Interstate Building and Loan Association of Kansas City, pursuant to chapter 17, article 10, Revised Statutes and amendatory acts. The shares are withdrawable installment shares of $200 each, the dues are $2 per month per share, and the shares mature and become of par value whenever the dues paid in and the dividends credited to the shares equal $200 per share. MacKinnon had paid two monthly installments of $2 per share, or a total of $100 on the twenty-five shares. The association has no permanent stock. MacKinnon contended his shares were exempt from taxation, but the assessor, acting under instructions from the tax commission, assessed the shares at their withdrawal value, $100.

In 1924 the article of the constitution relating to finance and taxation was amended to read as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide." (R. S. Supp. 1930, art. 11, § 1.)

In 1925 the legislature enacted a statute relating to taxation of moneys and credits, which classified shares in building and loan associations, other than permanent shares, as credits. (Laws 1925, ch. 277, § 1, as amended by ch. 278.) This statute was superseded by Laws 1927, chapter 326, which created the same classification:

"The term 'credits' shall mean and include notes, mortgages, foreign stocks, bonds, annuities, royalties, contracts, copyrights, claims secured by deeds and every liquidated claim and demand for money, shares of stock in building and loan associations, other than permanent stock, or other valuable thing, except

notes or obligations secured by mortgages on real estate, which mortgages have been recorded in this state, and registration fee or tax paid thereon, . . ." (§ 1.)

The law of 1927 was repealed by chapter 18 of the Laws of the Special Session of 1930.

Previous to enactment of the moneys-and-credits statutes rural-credit shares, which are withdrawable shares (R. S. 17-1052), were exempt from taxation by virtue of R. S. 17-1058, reading as follows:

"The amount to the credit of such rural-credit shares shall be exempt from taxation."

Previous to enactment of the moneys-and-credits statutes holders of withdrawal shares in building and loan associations were taxed pursuant to R. S. 79-327, which, in order to understand the scheme of taxation, should be read with R. S. 79-326. The two sections follow:

"Every building and loan association doing business in this state without permanent and fixed capital stock shall return for assessment and taxation the actual value in money of its office furniture and fixtures, and also the value of its assets in excess of the cash surrender value of the withdrawable shares outstanding on the first day of March, deducting therefrom the assessed value of any real estate to which said building and loan association holds the title in fee simple in which its surplus assets may be invested, and such real estate shall be assessed as other lands and lots are assessed." (R. S. 79-326.)

"Every shareholder in any building and loan association doing business in this state shall individually list for taxation, with his other personal property, the cash withdrawal value of all withdrawable shares of stock held by him on the first day of March, except shares upon which there is an indebtedness to the building and loan association secured by mortgage on real estate or by shares of stock pledged as collateral, which shares shall be listed at the withdrawal value thereof less any *bona fide* indebtedness secured thereby." (R. S. 79-327.)

The principal question is, What effect, if any, did the statutes of 1925 and 1927, and the repeal of the 1927 statute in 1930, have on the taxation of rural-credit shares and withdrawal shares of building and loan associations? The court is obliged to say the attempted classification in the statutes of 1925 and 1927 of building and loan association shares, other than permanent shares, as credits, was not permissible under the amended constitution.

A building and loan association is a form of incorporated business association. The holders of rural-credit and withdrawal shares are members of the corporation issuing the shares. In final analysis,

what the shareholders possess is units of legal relations. These units are called shares, and are evidenced by share certificates. These units of legal relations include rights, privileges, powers and immunities which the shareholder regards as actually or potentially beneficial to him. They also include duties and obligations respecting their shares which may be burdensome. For the sake of brevity, we say a share represents the interest of the shareholder in the association. While the nature of the shareholder's interest is only such as may exist under the building and loan association law and the charter and by-laws of the particular association, the interest is in fact that of a shareholder in a type of corporation, and is by no means limited to a mere pecuniary demand against the corporation. (See *Abrahams v. Medlicott,* 86 Kan. 106, 119 Pac. 375.) That interest is neither mineral product, nor money, nor mortgage, nor note, nor evidence of debt.

In 1927 the legislature passed an act defining the terms "stockholder" and "shareholder" as used in the building and loan association laws. The term stockholder was applied to the holder of shares of permanent stock, not withdrawable until the affairs of the corporation have been liquidated. The term shareholder was applied to the holder of withdrawal shares, the withdrawal or payment of which is not contingent upon payment of all liabilities of the association. (R. S. Supp. 17-1062.) The statute made no change in the legal relation between a holder of withdrawal shares and the association issuing them.

The statute exempting rural-credit shares from taxation was not expressly repealed by the moneys-and-credits acts of 1925 and 1927. Because the classification in those statutes of building and loan association shares, other than permanent shares, as credits, was nugatory, the exemption statute was not repealed by implication. In the opinion in the case of *Gunkle v. Killingsworth,* 118 Kan. 154, 233 Pac. 803, it was said the exemption statute was manifestly enacted to advance a policy involving the public interest, and to accomplish a public purpose; and because the exemption would conduce to the public welfare, it was competent for the legislature to make it.

Because of the defect in the moneys-and-credits legislation of 1925 and 1927 which has been pointed out, R. S. 79-327, relating to taxation of withdrawable shares, was not affected by that legislation.

The interstate association is not here. A shareholder is here, and we are not concerned with assessment of the association. Shareholders have no property interest in the furniture and fixtures or assets or real estate of the association. The corporation owns them and is assessed as owner. (R. S. 79-326.) The shareholder is assessed and taxed on the cash withdrawal value of his shares. Considered together, the two sections present an admirable scheme for taxing the corporation and its shareholders.

Writ of mandamus has already been allowed in the Ryan case, and denied in the MacKinnon case, in accordance with the views which have been expressed.

SMITH, J., not participating.