144 So. 104

### STATE v. GUARANTY SAVINGS BUILDING & LOAN ASS'N.

3 Div. 9.

Supreme Court of Alabama.

June 10, 1932.

Rehearing Denied Oct. 27, 1932.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

Benners, Burr, McKamy & Forman, of Birmingham, for appellee.

H. H. Montgomery, Commissioner State Building and Loan Department, R. B. Evins, of Birmingham, and E. W. Godbey, of Decatur, as amici curiæ.

FOSTER, J.

The question in this case is whether the requirement of section 229 of the Constitution, that the Legislature shall provide a franchise tax on domestic corporations in proportion to the amount of capital stock, applies to such stock of building and loan associations, payments on which may be withdrawn by the shareholder. Funds so received by building and loan associations, which are withdrawable by the members, are declared not to be capital stock for purposes of taxation, neither as a basis for (a) a franchise tax (Gen. Acts 1927, p. 177, § 55), nor (b) for an ad valorem tax beyond the value of its taxable property (Gen. Acts 1927, pp. 434, 437, § 5 (11).

In this case the parties have agreed that appellee "has no shares of stock the amount paid in on which may not be withdrawn."

The act of 1927 (page 431 et seq.), section 1, provides that three or more persons shall have the right to become a body corporate to carry on the business of a building and loan association, and shall have (b) capital stock subscribed and paid in, of not less than $5,000 of cash, and (f) may fix the kinds and classes of shares to be issued, of which the par or matured value shall be $50 per share, and (e) that it may repay to each of its members his savings whenever they have accumulated to the full par value of the shares or when he shall desire the same, or when the association shall desire to repay it; and section 3 (f) authorizes it to cancel shares of stock that have matured or the payment on which has been withdrawn and to reissue the same; and section 5 (8) provides that the capital of building and loan associations shall be paid by the subscribers in the manner provided by the by-laws, and payments on installment stock shall be called dues; and shares matured and surrendered or canceled. shall become the property of the corporation and may be reissued; and may issue fully paid up shares; that the by-laws shall provide for the different classes of shares, the manner in which they' may be withdrawn in whole or in part, and the extent to which they shall share in the net earnings, and the dividends, if any, to be paid; and (9) that members may have shares, if so provided, which have fixed earnings on their contributions; and (10) the right to vote shall be as provided by the by-laws; and (11) the holders of all classes shall be members, but withdrawal sums shall not be deemed capital stock for purposes of taxation.

The record on this appeal shows only one quality of the shares of its stock, and that is that all sums paid in on them are withdrawable at the will of the member.

■ "Capital stock [or a corporation] is the aggregate [amount] of money or other valuable thing contributed or paid into the common treasury, as a condition of the exercise of corporate functions, and a security for their faithful and prudent exercise." Comm. Fire Ins. Co. v. Board of Revenue of Montgomery County, 99 Ala. 1 (7), 14· So. 490, 493, 42 Am. St. Rep. 17; 2 Cooley on Taxation, § 868; 5 Fletcher, Cyc. of Corps. § 3413; 14 Corpus Juris, 379.

"If this trust fund be misapplied to objects or uses outside of the scope of the corporate powers, this is a breach of trust, and fastens a personal liability on those who perpetrate the wrong, commensurate with the injury, if any, caused by the misapplication; and persons receiving the trust fund so misapplied, knowing it to be such, make themselves trustees in invitum, and render themselves liable to the corporation whose funds are thus misapplied, or to the creditors of the corporation, for any diminution the trust fund may suffer in the transaction." Comm. Fire Ins. Co. v. Board of Revenue, supra; Hall & Farley v. Alabama· T. & I. Co., 143 Ala. 464, 39 So. 285, 2 L. R. A. (N. S.) 130, 5 Ann. Cas. 363; Id., 152 Ala. 262, 44 So. 592; Sherrill v. Hutson, 187 Ala. 189, 65 So. 538; Dacovich v. Canizas, 152 Ala. 287, 44 So. 473.

So that corporate· stock which carries the right of the shareholder at will to withdraw from the capital the amount paid into that fund is contrary to the ordinary conception of capital stock in a corporation.

ˋBut we are not here dealing with an ordinary corporation. We have shown the statutory authority for its existence, and that the right to withdraw contributions to its capital stock paid on subscriptions to its stock ownership is authorized by law. Such organizations have a genus of their own. It is said of them: "Building and loan associations are peculiar corporations in that, at the inception, a share therein has only a nominal value, and payment therefor is made at the end,

484

rather than at the beginning, and in that the capital may be diminished at the will of the shareholder, by his withdrawal. While it may be stated generally that their basic and essential principle is mutuality, and that they are neither corporations nor partnerships to the fullest extent, the courts have found it difficult and practically impossible to classify them accurately with other bodies. They have been variously described as mutual benefit associations, membership corporations, limited, quasi, or corporate partnerships, or as expedients resorted to for the more convenient prosecution of the particular co-partnership business for which they are organized, and as not being savings institutions or stock corporations within the meaning of certain statutes." 9 Corpus Juris, 921, 922. The right of withdrawal from the capital stock is said to be peculiar to them. 9 Corpus Juris, 938.

They are, however, classed by the text-writers as corporations whose capital stock is of the same nature as that of other corporations for taxation under constitutional equality. Endlich on Building Associations, § 495; Thompson on Building Associations, § 329; State ex rel. Morgan v. Workingmen's B. & L. F. & S. Ass'n, 152 Ind. 278, 53 N. E. 168; 37 Cyc. 848.

█ The general rule is that, if the Constitution forbids the exemption of corporations from taxation, the Legislature cannot create a corporation, not excepted from the constitutional requirement, and make it free from liability for the tax required by law to be collected of other corporations. Thompson on Building Associations, § 327, pp. 668, 669 (section 329); Charlotte B. & L. Ass'n v. Board of Commissioners, 115 N. C. 410, 20 S. E. 526; Deniston v. Terry, 141 Ind. 677, 41 N. E. 143.

█ If they are domestic corporations, and have capital stock, they are due to pay a franchise tax in proportion to the amount of such capital stock (section 229, Constitution) and the Legislature cannot exempt them. If it undertakes to do so, the exemption is void. State v. Elba Bank & Trust Co., 18 Ala. App. 253, 91 So. 917.

The Legislature cannot by its enactment authorize the organization of a corporation with capital stock (not benevolent, educational or religious) and at the same time declare that for taxation its capital stock is not capital stock.

It was intended and declared by the act to be a corporation with capital stock, though it has material distinctions from other corporations. So long as the shareholder has not withdrawn his contributions to the capital stock, the total amount of such contributions is its capital stock, and its character as such is not altered because the shareholder has the privilege of withdrawal. The exemption from a franchise tax in proportion to its stock, because the owner may withdraw such payments, is in our opinion in violation of section 229, Constitution.

We cannot therefore concur in the judgment of the circuit court, and it is reversed and one here rendered for the sum of $1,952.-50, which is at the rate of $2 per thousand on the capital amount agreed on, to wit, $976,250.90.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and BROWN, JJ., concur.

KNIGHT, J., not sitting.

On Rehearing.

FOSTER, J.

█ It is contended that our statement in the former opinion—that the Legislature cannot create a corporation with capital stock (not benevolent, educational, or religious), and at the same time declare that for taxation its capital stock is not capital stock—should be limited in effect to what is ordinarily meant by that term, and should not be held to include what may be called capital stock in name, but is not that in fact. We agree that it should not be controlled by the descriptive word, but rather by the qualities which are possessed by it (14 Corpus Juris, 417)—a principle which was not discussed in our former opinion. It is said in 14 Corpus Juris, 417: "If by the terms of their contract they are deprived of the rights and exempted from the liabilities of stockholders, and are expressly given the rights of creditors, by being secured or otherwise, the transaction is generally to be construed as a loan or contract to pay money, and the certificate holders are creditors and not stockholders. So parties from whom the corporation effects a loan, securing them by the issue of stock indorsed 'preferred,' and which is afterward surrendered for mortgage bonds, have been held to be bona fide creditors. On the other hand, if the instrument executed by a corporation has every essential feature of a certificate of preferred stock and is issued in the usual form of such stock, it is a certificate of preferred stock and not a contract for the payment of money, although it may provide for redemption by the corporation by a certain time on certain conditions, and in such a case the holders are stockholders and not creditors until a change is actually made."

The nature of building and loan associations and the relation of its stockholders, shareholders, or members, to the association, both before and after notice of withdrawal, when that is permitted, has been often treat-

ed by the American courts and text-writers. The conclusion of Thompson is shown by the following extract from pages 254 and 255 of his work on Building Associations: "The same rule that applies to general corporations, making its capital stock a trust fund first subject to the claims of the general creditors, applies to building and loan associations. Ordinarily these associations have few creditors—their members not coming within that term. Whenever the member withdraws, complying with all the requirements of the society, he becomes, in a restricted sense, a creditor, thus distinguished in his rights as against a continuing member; but he does not thus acquire the character of an outside creditor, for his claim has no position superior to the claims of the members except in priority of payment. Some confusion exists in the minds of members as to the character of their share-holdings. It has been aptly said with reference to general corporations that 'the capital stock is that money or property which is put into a single corporate fund by those who, by subscription therefor, become members of the corporate body; that fund becomes the property of the aggregate body only. A share of the capital stock is the right to partake, according to the amount put into the fund, of the surplus profits of the corporation, and ultimately, on the dissolution of it, of so much of the fund thus created as remains unimpaired, and is not liable for debts of the corporation.' 'Capital stock' and 'capital,' in general corporations, are often used interchangeably, and allowably so, because the capital stock represents that much property contributed to the corporation by the shareholders. In building and loan associations the legislature has authorized the issuance of capital stock which, in contemplation of law, was not only not paid up, but is not intended to be, except by periodical instalments and profit accretions. The capital stock in these associations has therefore no signification as it has in general corporations. It does not denote the amount of capital contributed. An association may have a million dollars of stock subscribed for and only two hundred thousand dollars paid in. The remaining eight hundred thousand dollars is in no sense an asset unless insolvency has overtaken the association, because the obligations of the subscribers thereon may be canceled at their will by withdrawing. * * * As in general corporations, the capital stock, so far as paid up, is the property of the membership, subject to the claims of creditors; but the members are entitled, unlike ordinary shareholders, to withdraw their respective parts of the aggregate property as they may wish. The certificate of stock and pass-book are mere evidence of the shareholder's rights."

In Cook v. Equitable Bldg. & Loan Ass'n, 104 Ga. 814, 30 S. E. 911, it was held that what was described "coupon stock" which bears interest at 6 per cent. per annum, payable semiannually, and upon which the holder of such stock pays the association its full face value, with the privilege after ninety days' notice of receiving or withdrawing the amount paid for it, and with a like privilege on the part of the association to call in and refund it, the scheme is but a borrowing of money. Reaffirmed in Cottingham v. Equitable Bldg. & Loan Ass'n, 114 Ga. 940, 41 S. E. 72.

This principle has been applied to corporations other than building and loan associations. Savannah Real Estate, L. & B. Co. v. Silverberg, 108 Ga. 281, 33 S. E. 908; Burt v. Rattle, 31 Ohio St. 116; 14 Corpus Juris, 416, 426, 427.

In Kansas, the recent case of Ryan v. Tax Commission, 132 Kan. 1, 294 P. 938, shows that its laws make a distinction between permanent and withdrawable shares for taxation, the owner of one called a stockholder and that of the other a shareholder. The latter are made subject to taxation at their withdrawal value less indebtedness secured thereby. But it is said that the shareholders have rights, privileges, powers, and immunities which he regards as beneficial to him, and that his interest is by no means limited to a mere pecuniary demand against the corporation.

In Home Bldg. & Loan Association v. State, 156 Okl. 89, 9 P.(2d) 731, the opinion quotes from Thompson Building Associations, supra, but it had under consideration only the question of taxing its cash, loans, accounts, etc., and not the taxation of its stock.

In People's Loan & Homestead Ass'n v. Keith, 153 Ill. 609, 39 N. E. 1072, 28 L. R. A. 65, it was held by the Illinois Supreme Court that an exemption of the stock and credits of a building and loan association is in violation of the equality provision for taxation in the state Constitution.

In Harn v. Woodward, 151 Ind. 132, 50 N. E. 33, 34, as quoted by Thompson, supra (p. 677), the question was whether withdrawable shares were assessable to the corporation as capital stock which was so provided by law, or whether they were "credits" assessable to the holder. It was held to be assessable, not as capital stock, but as a "credit" of the stockholder. It was said: "It is quite clear, we think, that one who deposits his money with an association subject to call at any time upon reasonable notice, and who may receive the interest upon or earnings of the money so deposited, is a creditor to the extent of such deposit and interest or earnings, and, although his credit may be evidenced by a certificate of stock or other writing, he is nevertheless a creditor, and his holdings, whatever called or however evi-

486

denced, constitute a credit," and, while the holder should be taxed as owning a credit, it is not stock assessable to the association. It was likewise so treated in West Virginia. Ohio, etc., Ass'n v. County Court, 42 W. Va. 818, 26 S. E. 203.

But in State ex rel. Morgan v. Real Estate Building & Loan Ass'n, 151 Ind. 502, 51 N. E. 1061, it is said: "It is settled law in this state that the stock in building and loan associations whether paid up, prepaid, running or otherwise is taxable at its true cash value," though it is not taxable to the association as capital stock but to the shareholders as credits.

In State v. Bradley, 207 Ala. 677, 93 So. 595, 596, 26 A. L. R. 421, in connection with section 229, Constitution, it is said: "Given the existence of a domestic corporation, the rate and tax period being prescribed by law as has been done, the only possible inquiry is the amount of the paid-up capital stock of the corporation." It is all said to be ascertainable as a ministerial act.

The act of 1927, which governs in this case (pages 434, 437, § 5), provides (8) that the "capital of every building and loan association shall be paid by the subscribers in the manner provided by the By-Laws of such association. All payments on installment stock shall be called dues. Certificates, passbooks or other evidence of the terms under which payments are made shall be issued to each shareholder," etc. "The By-Laws shall provide for the different classes of shares, the manner in which they may be withdrawn in whole or in part, the extent to which they shall share in the net earnings," etc.; and (9) "members shall have the privilege of electing to be associated in classes of shares having rights and privileges of fixed and definite earnings on their contribution, and, or assuming lesser obligations and duties to or waivers in favor of other classes as each shall prefer and elect." (10) "The voting power of members shall be such as may be provided for by the By-Laws."

The right to vote at a stockholders' meeting is the ordinary incident of, and inherent in, capital stock ownership. Section 7004, 7010, Code; 14 Corpus Juris, 898; Walsh v. State, 199 Ala. 123, 74 So. 45 (3), 2 A. L. R. 551. But some classes of stock may be excluded by the charter from voting except in respect to such matters as to which the right cannot be denied. Sections 7005, 7003, Code; section 234, Constitution; section 7006, Code; section 237, Constitution. Such restricted voting power does not deprive the holders of the qualities of stock ownership. On the other hand, sometimes provision is made for bondholders to exercise such right upon certain contingencies (14 Corpus Juris,

901), but it is not the ordinary incident of mere credit ownership.

There are various other powers, rights, privileges, immunities, and burdens which are peculiar to the ownership of capital stock and do not apply to creditors. Sections 6986, 6992, 6993, 6995, 6996, 6997, 6998, 6999, 7000, 7001, 7002, Code; Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516; Oden v. King, 216 Ala. 504 (7), 113 So. 609, 54 A. L. R. 1413; Gettinger v. Heaney, 220 Ala. 613, 127 So. 195. A fixed ratio of return, a fixed date of maturity, and preferences or guaranties, if any, are material.

█ If an investor possesses the usual elements of a stockholder owning capital stock, save only the right to withdraw on sixty days' notice, we must hold that such stock ownership is of capital stock within the meaning of section 229, Constitution, until the withdrawal notice is given. But not so when the members are shown to be in effect but depositors upon an interest-bearing basis, not possessing the usual attributes of stock ownership.

█ We understand from the agreed statement of facts, which is very brief, and from the argument of counsel, that the only question on this appeal briefly stated is whether the fact that the shareholders in an Alabama building and loan association may on sixty days' notice withdraw the funds which they have contributed to the corporation, as its so-called capital stock is decisive of their status as stockholders or as creditors. And, as we are of the opinion that such alone is not so decisive, but that it is only one circumstance, and that the question is properly answered by determining whether other usual elements and attributes of stock ownership exist, and, as we interpret the contentions of counsel and the agreed facts, the existence of such other qualities is not denied, we think that to overrule the application for a rehearing is the proper result of our views. In so holding, Chief Justice ANDERSON and Justices BOULDIN and BROWN concur with the writer. Justices GARDNER and THOMAS concur in the conclusion of law, but hold that we should not interpret the agreed facts and argument of counsel to concede the existence of the usual incidents of stock ownership other than the right of withdrawal; but that, because it does show the organization of a domestic corporation under the laws of Alabama, the state was due to recover at least $2 the minimum franchise tax, and that the cause should be reversed and remanded for another trial when all the attributes of the shareholders may be shown.

Application for rehearing overruled.

KNIGHT, J., not sitting.