# CHARLESTON.

Ohio Valley Building & Loan Asso'n *v.* County Court of Cabell County.

Submitted September 15, 1896—Decided December 16, 1896.

Building & Loan Associations—Assessment of Building Associations.

> Building and loan associations are not to be assessed with a capital stock. The members are to be assessed with their shares.

V. B. Archer and Simms & Enslow for plaintiff in error, cited Const. Art. XI, s. 2; Code, c. 53, s. 1; Code, c. 54, ss. 2, 3, 25, 26, 27, 28, 29, 81a; 2 Bouv. Law, Dict. 267, "Owing;" 18 Am. & Eng. Enc. Law, 408, 409; 126 N. Y. 433; 95 U. S. 679; 3 Wall. 573; 9 Wall. 553; Thomp. Corp. Vol. I, § 1065 *et seq.*; Cook, Stock, §§ 563-565, 567; Thomp. Corp. Vol. II, § 2811; Code, c. 29, s. 64; 141 Ind. 677; Const. Art. X, s. 1; 12 Iowa, 531; 28 Iowa, 370; Cooley, Tax. p. 165; 46 N. H. Rep. 389.

George J. McComas for defendant in error, cited Code, c. 29, s. 64; 28 W. Va. 264; 38 W. Va. 338; 19 Kan. 587; 36 W. Va. 341; 41 W. Va. 658; Const. Art. VIII, s. 3; 20 S. E. Rep. 526.

Brannon, Judge:

The Ohio Valley Building & Loan Association, having been assessed by the assessor of Cabell county with taxes on a certain amount of personal property, applied to the county court to correct the assessment, and, that court having reduced the amount for taxation, it appealed to the circuit court, which, while further reducing it, yet held it liable to assessment with a certain amount, and the association obtained this writ of error.

The amount assessed with taxes is made up by including a certain sum as the value of the capital employed by the association in business; and it claims that it is not chargeable at all with any amount as for its capital, and thus the question is not one of mere valuation of property, as in *Mackin* v. *County Court*, 38 W. Va. 338 (18 S. E. 632) but one of right to tax—the taxability of the supposed capital; and so we have jurisdiction. *Charleston & S. Bridge Co.* v. *Kanawha County Court*, 41 W. Va. 658 (24 S. E. 1002); *State* v. *South Penn Oil Co.*, 42 W. Va. 81 (24 S. E. 688). The right to impose this taxation must rest on Code, c. 29, s. 64, requiring the assessor to ascertain from officers of corporations "the actual value of the capital employed or invested by them in their trade or business." Code, c. 53, s. 1, defines a joint stock company as one "having a joint stock or capital divided into shares owned by the stockholders." Has this corporation a joint stock—in other words, a capital? Here it may clear our thoughts to remember that capital is one thing, but the stock of the individual shareholder, commonly called "stockholder," is another. The capital stock is the solid sum of money in the aggregate of the sums paid in by subscribers to the capital, to enable it to carry on the corporate business, in whatever manner engaged or invested; whereas the stockholder has a number of shares, constituting only an undivided interest in the capital, entitling him only to a dividend in the profits of its business, but not to a part of the capital while it endures, and to his proportionate share in its capital on dissolution after debts paid. The capital belongs to the corporation as an artificial being, and no stockholder has any right to a dollar of it any more than a stranger. This will appear from that latest and greatest work on corporations, Thompson's Commentaries on the Law of Corporations (sections 1060, 1065) and *Farrington* v. *Tennessee*, 95 U. S. 679. This taxation, under section 64, is limited to capital, and is assessed against the corporation. To be taxed, it must have that which is in law capital, for the corporation can not be taxed with the shares of the stockholder, nor the shareholder with the capital. Thomp. Corp. § 2811. Taxes on property are assessed on a person,

natural or artificial, not as such, but only in respect to property owned by such person; and, if that person does not own the property, that person can not be taxed.

Let us look at the character of building associations under Code, c. 54. It is a peculiar corporation, markedly different from the ordinary joint stock company. It has the right to sell to its stockholders bidding the highest premiums, the money accumulated from time to time. How does this money accumulate? By collecting from stockholders periodical dues upon shares of its stock, and interest collected from members to whom loans are made—that is, interest on the par value of the shares so loaned—and by imposing fines for failure to pay periodical dues, or comply with any other obligation or duty to the corporation. I see no provision for income otherwise; no provision for loans to others than members; no provision for other business than by such membership, and, as flowing from it, the right to borrow of its money, "to encourage industry, frugality, and home building and saving among its members." It has no business save this. It does not carry on commercial or manufacturing business. Persons associate, take shares, pay them in small dues from time to time, borrow this same money to build homes with, mortgaging it, and discharging the mortgage in a certain period by such payments. The object is not to make gains by way of profits. The shares do not participate in profits distributed as dividends, nor at dissolution do they participate in assets. And there is a feature differing from shares in banks, railroad, and other joint stock business companies; that is, that the shareholder can at any time draw out what he has paid in, and its proportionate share of earnings by way of interest and fines. Thus, the members may at any time claim specific sums out of what is the only thing which could be at all called "capital." They may draw all of it out, and thus end it. Not so as to joint stock companies. It is thus a debtor to its stockholders, and, while the stockholders are debtors to it, yet, whenever the stockholder chooses to close that relationship of debtor to the company, he can withdraw, and take with him all he paid in. The company owes its members (miscalled "stockholders") all it has.

They have deposited with it, and may withdraw their deposit any time. "Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense. They are obligations of the debtors, and only possess value in the hands of creditors. With them they are property, and in their hands may be taxed. To call debts property of the debtors is simply a misuse of terms." Opinion in *State Tax on Foreign-Held Bonds*, 15 Wall. 319. In *Deniston* v. *Terry*, 141 Ind. 677 (41 N. E. 143) the court said: "The stockholder who is simply a lender to a creditor of the association holds his stock as evidence of such credit, just as he might hold the note or other obligation of the association. Whether, in fact, he holds a certificate of stock or not, or whatever evidence there may be of such credit, can make no difference. He is an actual creditor. The law looks through names, and sees the things which the names stand for. Such a credit, therefore, by whatever name it may be called, or however it may be evidenced, is taxable under the Constitution as any other credit. All building and loan stock, unless it be that held by borrowers, is taxable. Under the law the stock or shares are to be charged to the holder of the stock, and the tax paid by him, not by the association." I think this suits our statute. The features of the Indiana law and ours which cast this question are kindred. Indeed, these building associations generally have features mainly alike. 2 Am. & Eng. Enc. Law, 623.

This logically ends all that need be said, as it brings us to the conclusion that the association has no capital to be taxed to it; but it may fortify that conclusion to say something further. Some one will ask, where does the public get its taxes on that money? From the members, or so called "stockholders," I answer. They give in their stock as "investments," under Code, s. 47, c. 29. They deduct for what they yet owe on their membership, so as to give net what they have paid in. What a member has not yet paid in is non-existent or taxed to him as money or credit; at any rate, the association has not yet received it. If, in fact, it has in its treasury a given sum, large or small, it

came from stockholders, and they are thus taxed with it, and to assess it to the association would be duplicate taxation. We do not impute to the legislature an intent to doubly tax (Thomp. Corp. § 2814) and so need not discuss whether a statute taxing doubly would be constitutional, under Const. Art. X, s. 1, or on general principles. Double taxation seems within the taxing power, unless prohibited by that section; but it does not arise, unless we assume there was an assessment to the stockholder and association.

The judgment of the circuit court holding the capital stock of said association liable to taxes is reversed, and it is here ordered and considered that the same is not liable to such tax, and the assessment thereof is released.