CHARLESTON FEDERAL SAVINGS & LOAN ASSOCIATION *et al.*
*v.* ERNEST K. JAMES, *Tax Commissioner, et al.*

(No. 8834)

Submitted October 19, 1938.   Decided December 8, 1938.

*Clarence W. Meadows,* Attorney General, *Ira J. Partlow,* Assistant Attorney General, and *Marlyn Lugar,* Special Assistant Attorney General, for appellants.

*Lively & Lively, Ritchie, Hill & Thomas, Charles Ritchie, M. E. Boiarsky* and *Emery J. Woodall,* for appellees.

KENNA, JUDGE:

The Charleston Federal Savings & Loan Association and two other organizations of like nature were, on June 2, 1938, granted an injunction by the Circuit Court of Kanawha County restraining Ernest K. James, State Tax Commissioner, and J. H. Abbott, Assessor of Kanawha County, "from assessing for taxation purposes the intangible and personal property of plaintiffs, as if they were ordinary business corporations, under the provisions of Sections 12 and 13, Article 3, Chapter 11 of the Code of West Virginia, as last amended, which said sections provide for the assessment of corporate property in this State; * * * ." On June 24, 1938, upon the intervening petition of Farmers' Building & Loan Association, a West Virginia corporation, a similar injunction order was entered as to it. The appeals from both orders were granted by this Court upon the application of the State Tax Commissioner.

The respondents demurred to both the bill of complaint and the intervening petition and filed a verified answer to each. The question of law, the decision of which resulted

in the court's overruling both demurrers and holding that the answers did not set up a sufficient defense to the allegations of the bill of complaint, was whether or not state building and loan associations are to be classified as ordinary business corporations and are taxable as such. The Federal Statute (12 U. S. C. A., section 1464[h]) provides, in effect, that federal building and loan associations shall not be subjected to taxation by the local taxing authorities except to the extent that state building and loan associations are taxed. Therefore, a solution of the question of whether or not the state building and loan associations are taxable as ordinary business corporations under Code, 11-3-12, 13, is applicable to both classes of building and loan associations.

The law of West Virginia has been assumed to be in conflict with the law of nearly every other state where the question has arisen since 1896 when this Court decided the case of *Ohio Valley Building & Loan Association* v. *County Court,* 42 W. Va. 818, 26 S. E. 203, the only syllabus of which reads as follows: "Building and loan associations are not to be assessed with a capital stock. The members are to be assessed with their shares." The decision of this case followed the decision of the Indiana Supreme Court in *Denniston* v. *Terry,* 141 Ind. 677, 41 N. E. 143, which also had to do with the question of whether the stock or shares in a building and loan association were taxable in the name of the stockholder or in that of the association. The statute under consideration in the West Virginia case was section sixty-four of chapter twenty-nine of the Code of 1891, which provided that the assessor should "ascertain from the proper officers or agents of all incorporated companies in his district (except railroads and foreign insurance, telegraph and express companies), the actual value of the capital employed or invested by them in their trade or business (exclusive of real estate and property exempt by law from taxation), and enter the same in his personal property book." There was no statutory provision placing building and loan associations in the same category

with the corporations exempted from the provisions of this section.

In the opinion handed down by this Court in *Ohio Valley Building & Loan Association* v. *County Court*, 42 W. Va. 818, 26 S. E. 203, the Indiana case that was followed was the only decided case cited or discussed.

In 1900, the Supreme Court of New Mexico, in the case of *Territory* v. *Co-operative Building & Loan Association of Albuquerque*, 10 N. M. 337, 62 P. 1097, rendered an opinion based upon both constitutional and statutory provisions similar to those of this state. In that case it was held that the shares of stock in a building and loan association were subject to taxation and could be assessed in the name of the corporation, and that neither the stock nor the mortgages to secure loans "of such corporations" were exempt from taxation.

The New Jersey Supreme Court, in the case of *State, Washington B. & L. Association, Pros.* v. *Creveling, Collector, etc.,* 39 N. J. L. 465, held that building and loan associations were to be assessed and taxed at the full amount of their capital stock and accumulated surplus. The case of *State, W. B. & L. Association, Pros.* v. *Hornbacker*, 41 N. J. L. 519, was decided in the New Jersey Supreme Court in 1879, and it was there held that the intangible personal property of a building and loan association were assets and assessable as property of the corporation. The New Jersey Court of Errors and Appeals granted a certiorari, but upon submission of the case (42 N. J. L. 635) affirmed the holding of the Supreme Court holding that the statutory provisions concerning corporations were applicable to building and loan associations and that their property was assessable "like that of individuals."

In *Turco Paint & Varnish Company* v. *Kalodner* (1936), 320 Pa. 421, 184 Atl. 37, the Supreme Court of Pennsylvania, in what we regard as an extremely well-reasoned opinion, held that the use of the word "corporation" by the legislature in tax legislation covered all classes except those that they had specifically excluded.

Building and loan associations had been specifically excluded from an act, the title of which was "Corporate Net Income Tax Act", the specific exclusion being necessary because, without such exclusion, the act would have been applicable to building and loan associations.

In a somewhat exhaustive opinion, the Wyoming Supreme Court, in *Albany Mutual Building Association* v. *City of Laramie* (1901), 10 Wyo. 54, 65 Pac. 1011, held that, in the absence of a constitutional or valid statutory provision exempting it from taxation, being organized in the nature of a building and loan association did not render a corporation's property non-taxable, and stressed the well-grounded principle that the presumptions are all against exemption from taxation.

The Supreme Court of Alabama also laid down the principle that a building and loan association is to be regarded as a "domestic" corporation, regardless of the privilege of its shareholders to withdraw their contributions at any time on notice, and held further that a constitutional provision forbidding the exemption of corporations from taxation rendered it impossible for building and loan associations to be exempted by the legislature. *State* v. *Guaranty Savings Building & Loan Association*, 225 Ala. 481, 144 So. 104, 86 A. L. R. 819. The last citation includes an annotation that will be found extremely useful. The same court, in *State* v. *Tuscaloosa Building & Loan Association*, 230 Ala. 476, 161 So. 530, 99 A. L. R. 1019, held that a building and loan association was liable for a license tax imposed upon every person, firm or corporation whose principal business was lending money. Though the case is not directly in point, it seems to us that the basic principle is analogous. The report of this case in A. L. R. is also followed by an annotation.

In addition to this Court's decision in *Ohio Valley Building & Loan Association* v. *County Court*, 42 W. Va. 818, 26 S. E. 203, being adverse to what has since become a clearly preponderating number of decisions, since that time our entire property tax structure in this state has been altered. It is unnecessary for us to review the

recent and basic changes in our fundamental law. The statute under consideration when that opinion was rendered was repealed some years ago, and its place has been taken by Code, 11-3-12, 13, the construction of which as to building and loan associations is now before us for the first time. The provision authorizing the deduction of indebtedness from the taxable value of personal property of corporations was omitted when Code, 11-3-12, was re-enacted at the First Extraordinary Session of the Legislature of 1933. (Compare Chapter 38 of the Acts of that session with Code, 11-3-12, of 1931). For these reasons, we do not regard *Ohio Valley Building and Loan Association* v. *County Court*, 42 W. Va. 818, 26 S. E. 203, as more than persuasive and consider ourselves free to adopt the line of reasoning that we think more applicable to present day conditions. We cannot clearly perceive how, by the position stressed by appellee that in holding the stock of a building and loan association taxable in the hands of its shareholders but not in the name of the association, saving thrift was greatly encouraged by the case last cited. What boots it if the taxes are in fact paid?

For the foregoing reasons, we are of the opinion that a state building and loan association is an *incorporated company* within the meaning of that term as used in Code, 11-3-12, and is a *corporation* in the meaning of that term as used in the section which follows. The consequence which follows the foregoing conclusion is that federal building and loan associations are taxable in this state to the same extent as the state institutions. It follows that the two decrees of the Circuit Court of Kanawha County are reversed and the injunction dissolved, this Court dismissing both the bill of complaint and the intervening petition.

*Reversed; bill and petition dismissed.*

MAXWELL, PRESIDENT, dissenting:

As pointed out by the court in *Ohio Valley Building & Loan Association* v. *County Court*, 42 W. Va. 818, 26

S. E. 203, the monies held by a building and loan association are not in any sense capital of the organization. They are purely savings which constitute an accumulated fund for the benefit of the members. Code, 31-6-2. True, since the above decision, section 19, chapter 58, Acts 1931, Code, 31-6-19, has authorized the investment of surplus funds not only in real estate as theretofore, but in loans to persons not members of the association. This is merely a convenient manner of preserving the members' money and does not change the foundation principle.

Such funds belong to the members in the several amounts determined by the number of shares of stock they own, respectively. That is as true today as when the opinion in the above case was written. With other corporations the capital funds are corporately owned. This fundamental differentiation between savings organizations and ordinary corporations remains unimpaired by legislation.

In my judgment, this basic fact should require that we adhere to the taxation principle promulgated in the cited case and which has been followed by the taxing authorities of the state since the decision in 1896. That decision, sound in principle, as I see it, and supplemented by forty years of administrative acquiescence and effectuation, should not, in my opinion, be supplanted by a different theory obtaining in some of the other states. In my view a change of base is not warranted.

Therefore, I would affirm the trial chancellor's decree.

With regret, I dissent from the decision of my brethren.