*In Re*: Tax Assessments Against Hancock County Federal Savings and Loan Association.

(No. 9382)

Submitted January 13, 1943. Decided March 2, 1943.

Rose, Judge, and Riley, President, dissenting.

*William S. Wysong,* Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *Howard J. Gibson,* for appellant.

*W. W. Ingram* and *Handlan, Garden & Mathews,* for appellee.

Fox, Judge:

This appeal involves the interpretation and application of Section 14-a, Article 3, of Chapter 118 of the Acts of

the Legislature, 1939, relating to the assessment for the purposes of taxation of the property of building and loan associations and federal savings and loan associations. The particular question at issue is the assessment for the year 1941 of the property of the Hancock Federal Savings and Loan Association, the principal office of which is in Hancock County, West Virginia.

The assessment complained of was made upon a consideration of the following statement stipulated in the record, and was reached by an examination of the books of the loan association. We copy the stipulation:

"It is stipulated and agreed by counsel representing the respective interests in these proceedings that instead of the original return used by the Assessor in making up the personal property books for 1941, and testified to by said witnesses Robert A. Douglass and Kenneth Hill, being filed as an exhibit herein, that same be copied into and made part of the record, and read and considered as part of the evidence in this cause, which said return reads as follows:

Name—Hancock County Federal Savings and Loan Association of Chester—Hancock County.

#### Capital Stock or Shares

| | | |
|---|---|---|
| Optional saving Shares | $1,887,689.96 | |
| Free Shares | 658,300.00 | $2,545,989.96 |

#### Other Capital

| | | |
|---|---|---|
| Surplus | 360,540.33 | |
| Undivided Profits | 145,735.05 | |
| Federal Ins. Reserve | 140,000.00 | |
| Uncollected Interest | 4,627.97 | 650,903.35 |

| | |
|---|---|
| Total | $3,196,898.31 |

#### Deductions

| | |
|---|---|
| Assessed value of real estate | 278,150.00 |
| Other Deductions | 30,000.00 |

| | | |
|---|---|---|
| Borrowed Money | 50,000.00 | |
| Total Deduc. | | 358,150.00 |

Net Value        $2,838,743.31."

Another stipulation, not entirely clear to us, immediately follows the above, and reads:

"It is further stipulated and agreed that instead of the original return made by the petition and testified to by said witnesses Robert A. Douglass and Kenneth Hill being filed as an exhibit herein, that same be copied into and made part of the record, and read and considered as part of the evidence in this cause, which said return reads as follows:

Schedule D
Capital Stock or Shares

| | | |
|---|---|---|
| Optional Savings—Par $100.00 Amount | | $1,887,689.96 |
| Full paid—Par $100.00 Amount | | 658,300.00 |
| Total Free Shares | | $2,545,989.96 |

Deductions

| | | |
|---|---|---|
| Assessed value of real estate | $278,150.00 | |
| Other Deductible Liabilities | 79,000.00 | 357,150.00 |
| Net Capital Value | | $2,188,839.96 |
| 30% Deduction | | 656,651.99 |
| Net Value | | $1,532,187.97." |

We proceed on the assumption that these stipulations represent the contentions of the parties, although the record discloses that the association claims that there should be a further deduction of $139,162.02 representing the difference between the amount at which its real estate was carried on its books, and its assessed value, and at one point in the testimony the claim is made that the assessment value should be fixed at $1,332,152.77. The principal points of difference are $650,903.35, being the aggregate of surplus, undivided profits, reserves and uncollected interest, and the arbitrary deduction of thirty

per cent from what is termed the "Net Capital Value" of the stock or shares being assessed, and amounting to $656,651.99, and based on the contention that other property in Hancock County, particularly real estate, was not assessed in excess of seventy per cent of its value.

The assessor, disregarding the odd figures under $100.00, assessed the property of the loan association at $2,838,700.00 under classification No. 1. An appeal from this assessment was prosecuted before the county court, acting ex officio as a Board of Review and Equalization, which body sustained the action of the assessor. The Circuit Court, on appeal from the board's ruling, reduced the assessment made by the assessor to the sum of $2,267,-839.96, or a net reduction of $570,803.35, by disallowing the deductions of $30,000.00 and $50,000.00 designated in the stipulated statement above as "Other Deductions", and "Borrowed Money", and allowing a deduction of $650,-903.35 covering the items of surplus, undivided profits, reserves and uncollected interest. From this finding and order, the State Tax Commissioner prosecutes this appeal.

The question of the assessment of the property of building and loan associations has been twice before this Court. In 1896, in *Ohio Valley B. & L. Assn.* v. *County Court,* 42 W. Va. 818, 26 S. E. 203, we held: "Building and loan associations are not to be assessed with a capital stock. The members are to be assessed with their shares." In *Charleston Federal Savings and Loan Association* v. *James,* 120 W. Va. 781, 200 S. E. 845, we held: "Both state and federal building and loan associations are *incorporated companies* within the meaning of Code, 11-3-12, and are *corporations* within the meaning of Code, 11-3-13. Therefore, their intangible and other personal property is subject to taxation." The decision in this case was reached on a consideration of decisions from other jurisdictions, rendered subsequent to the decision first above referred to, and by reasons of fundamental changes in our tax laws which, in our opinion, made our first decision inapplicable. *Loan Assn.* v. *James, supra,* was de-

430

cided in December, 1938, and the Legislature, at its session next following, enacted a statute specifically providing for the assessment of the property of building and loan and federal loan associations. The pertinent provisions of this statute read as follows:

"Sec. 14-a. *Assessment of Capital and Realty of Building and Loan Association, and Federal Savings and Loan Association.* The capital of every building and loan association and federal savings and loan association, as represented or evidenced by the investment shares and investment accounts in such association, shall be assessed at its true and actual value, according to the rules prescribed by this chapter, to such building and loan association or federal savings and loan association in the county, district, and town where such association is located: *Provided, however,* That such shares and such accounts held by the United States government or any of its agencies shall not be included in determining the assessment. The real and actual value of such capital, represented by the market value of such investment shares and investment accounts as aforesaid, shall be ascertained according to the best information which the assessor may be able to obtain whether from any return·made by such association to any officer of this State or the United States, from actual sales of such investment shares and investment accounts, from answers to questions by the assessor, as hereinafter provided, or from other trustworthy sources.

\*    \*    \*    \*    \*

The real estate of any such building and loan association or federal savings and loan association shall be assessed as in other cases, and a proportionate share of such assessed value shall be deducted in ascertaining the market value of such investment shares and investment accounts, but in ascertaining the true and actual value of such capital as represented by such investment shares and investment accounts as aforesaid, the assessor shall take into consideration all earned reserves and undivided profits of any such association."

It will be noted that the statute quoted refers to "The real and actual value of such capital, represented by the market value of such investment shares and investment accounts". The record before us shows that the investment shares have no market value in the sense in which that term is usually employed. The value of the shares are frozen at par, and may be purchased from the association at any time at that price. Therefore, the price at which such shares may be purchased fixes their sale value, and affords no useful criterion in fixing their real value. We do not think this provision was intended to be all controlling, and certainly not to the extent of permitting a loan association to escape taxation on assets which make the shares possess an actual value beyond their value in the market place. In this instance, if we were assessing these shares to the owner, as distinguished from the association, the price at which they could be sold would be their actual value; but when we assess the association, we assess all of its property, as under our constitution we must. The fact that the association holds assets in excess of those necessary to make the investment shares worth par, leaves that excess in the hands of the association. That excess is property owned by the association. Among whom it shall be finally distributed is of no concern; it is nevertheless property which should contribute to the support of the government which protects it. We think that part of the statute which refers to market value is inapplicable to the case at bar.

Furthermore, the statute expressly says: "* * * in ascertaining the true and actual value of such capital as represented by such investment shares and investment accounts as aforesaid, the assessor shall take into consideration all earned reserves and undivided profits of any such association." For what purpose shall they be taken into consideration? The manifest object of section 14-a is to secure the assessment of the association's property, and to provide for the ascertainment of the true and actual value thereof, and it is difficult to perceive what possible meaning, other than that relating to value, can

be attributed to the language used. We hold that the assessor properly included in his assessment of the association's property the sum of $650,903.35 covering the reported value of the association's surplus, undivided profits, reserves and uncollected interest.

We are fortified in our conclusion by a study of the constitutional provisions relating to taxation which have guided us from the foundaton of the state. That all property, both real and personal, shall be assessed, is one of the fixed stars in our system of taxation will be disclosed below.

Section 1 of Article VIII of our Constitution of 1863, provides:

"1. Taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value; * * *."

Section 1, Article X, the Constitution of 1872, reads:

"Taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value; * * *."

Section 1 of Article X, was amended by a vote of the people in 1932, and now reads:

"1. Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value; * * *."

These quotations do not cover provisions as to property which may be exempted from taxation.

While making fundamental changes, the requirement that all property, not specifically exempt, shall be assessed for purposes of taxation is retained. Under our present constitution, property is classified and made to bear different rates of taxation, but the provision which provides that all property shall bear some burden of taxation remains in its original form. Any legislation which relieves property of this burden would directly and plainly violate our constitution, and it cannot be assumed that the Legislature, when it enacted the statute here involved, had any such purpose in mind. Even if it had such purpose, it could not legally make the same effective. We are convinced that the Legislature's intent and purpose was in keeping with the constitutional provisions now in effect, and that it used appropriate language to make effective such purpose.

We find no fault with the Circuit Court's action in relation to the deduction of $278,150.00 representing the assessed value of the real estate owned by the association. Such action was clearly in accord with the statute which the Legislature had the power to enact. The value of any class of property is, under the constitution, "to be ascertained as directed by law". Here we have specific direction as to how credit may be given in the ascertainment of the taxable value of property, where the value of that property is partly represented by real estate which has already been assessed, and we would not be justified in prescribing any other method.

The contention that we should reduce the assessment of the association's property because, as contended, certain property of other classes, particularly real estate, is assessed at something less than its true and actual value is without merit. In *West Penn Power Co. v. Board of Review*, 112 W. Va. 442, 164 S. E. 862, it was held, in effect, that a taxpayer was entitled to have his property assessment reduced to the level at which other property of the

same class was assessed in the same governmental unit. It will be noted that this decision applies to property of the same class. It does not appear that intangible property in Hancock County is assessed at less than its true and actual value. There is, therefore, no basis for the application of the rule laid down in the *West Penn* case. This question was raised in *Christopher v. James,* 122 W. Va. 665, 12 S. E. 2d 813, 816, and it was stated in the body of the opinion that the requirement of equal and uniform taxation set out in Section 1, Article X of our Constitution "means merely that as to classes of property, businesses or incomes there shall be uniformity of taxation." See also, *Bistor v. McDonough,* 348 Ill. 624, 181 N. E. 417; *People v. Telephone Co.,* 277 Ill. 303, 36 N. E. 2d 362.

The assessor allowed the association a deduction of $30,000.00 under the head of "Other Deductions", and $50,000.00 for "Borrowed Money". These deductions were disallowed by both the County Court, acting as a Board of Review and Equalization, and the Circuit Court. We think both should be allowed. It is not quite clear what "Other Deductions" cover, but the record does disclose that the association owns $24,000.00 of stock in the Federal Home Loan Bank of Pittsburgh and $5,000.00 Home Owners' Loan Corporation bonds, and these two investments practically cover this item. The $50,000.00 borrowed money lessened the item of undivided profit to that extent. We are not unmindful of the statute which prevents deduction for indebtedness as applied to the ordinary case, but here we have a statute which, as we hold, requires an ascertainment of the value of investment shares and accounts, in which ascertainment earned reserves and undivided profits shall be taken into consideration. Where we do this we should consider items which lessen the amount of such undivided profits and reserves.

In the consideration of this case, we have assumed that the values reported are true values. Should the

property of the association be of less value than that carried on its books, it is assumed that, upon a proper showing, future assessments will be made in accordance to the realities of the situation, as may then be presented to the taxing authorities. The case presented to us is one where, if we accept the view of the association, a very large sum of money will escape taxation, in face of constitutional requirement that all property be taxed, and in face of a statute which we think was intended to and does conform to the constitutional mandate.

We, therefore, reverse the Circuit Court of Hancock County in the particulars set out in this opinion, and fix the assessment of the property of the association for the assessment year beginning January 1, 1941, at the sum of $2,838,700.00, with costs to the appellant.

*Reversed.*

Rose, Judge, dissenting:

According to my understanding of the law, and of the facts as presented by this record, neither the conclusion reached by this Court, nor that of the court below; nor the statute itself establishing the method of assessing the property of building and loan associations, conforms in all respects with the requirement of the Constitution of West Virginia applicable to the assessment of property. Section 1, Article 10, of the Constitution provides: "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law * * *". We are concerned here with the language "all property, both real and personal, shall be taxed". This rule of the Constitution is perfectly clear, perfectly simple and easily workable. It simply requires that all property of whatsoever character and by whomsoever owned shall be taxed. So far as the Hancock County Federal Savings and Loan Association is concerned, this would have been an extremely simple proceeding. It would have involved merely a listing of this

association's property, real and personal, tangible and intangible, and fixing the true and actual value of each item. The process would have been somewhat lengthy by reason of the large number of these properties, but there would have been involved no complications and no uncertainty whatever.

But the Legislature by Chapter 118 of the Acts of 1939 did the anomalous thing of providing that in the case of every "building and loan association and federal savings and loan association" the assessment should be based, not on its property, but on its capital—not on its *assets* but on its *liabilities*. The provisions of this Act are perfectly plain: "The capital of every building and loan association and federal savings and loan association, as represented or evidenced by the investment shares and investment accounts in such association, shall be assessed at its true and actual value, according to the rules prescribed by this chapter, to such building and loan association or federal savings and loan association in the county, district and town where such association is located". The manifest intent and direct effect of this Act is to require the assessment, not of "all property, both real and personal" of the association as required by the Constitution, but only of the "capital", and not even of all the capital, but only of the capital "as represented or evidenced by the investment shares and investment accounts in such association". It is true that the Act further provides that "in ascertaining the true and actual value of such capital as represented by such investment shares and investment accounts as aforesaid, the assessor shall *take into consideration* all earned reserves and undivided profits of any such association"; but this requirement is not that such reserves and undivided profits, shall be assessed, but simply that they *shall be taken into consideration,* for what effect may be considered proper. And the provision affects only "earned" reserves, not reserves which may have been paid in, and does not require the assessor to take into consideration other items of the capital structure, such

as outstanding bonds, if any, preferred stock, if any, reserves for other purposes, or any of a large number of possible items frequently present and wholly proper in a statement of the capitalization of such a corporation. Two conclusions therefore are perfectly plain: (1) That the property itself of the association is not proposed to be directly assessed or taxed; and (2) that only a limited part of the liabilities are to be considered in fixing the assessment.

A little history explains this anomaly. Prior to December 8, 1938, this Court held that "Building and loan associations are not to be assessed with a capital stock. The members are to be assessed with their shares." *Ohio Valley Building & Loan Association* v. *County Court,* 42 W. Va. 818, 26 S. E. 203. On that date, however, this Court modified its position to this: "Both state and federal building and loan associations are incorporated companies within the meaning of Code 11-3-12 and are corporations within the meaning of Code 11-3-13. Therefore, their intangible and other personal property is subject to taxation." *Charleston Federal Savings & Loan Association* v. *James,* 120 W. Va. 781, 200 S. E. 845. At the first session of the Legislature thereafter, to-wit, on March 11, 1939, Chapter 118, above quoted from, was enacted. This apparently was designed expressly to neutralize this Court's holding in *Charleston Federal Savings & Loan Association* v. *James, supra,* and to restore the law as it was under *Ohio Valley Building & Loan Association* v. *County Court, supra,* with the single exception that the stock under the new Act was to be assessed, not against the holders, but against the corporation itself. The Legislature, of course, had the power to pass an Act modifying or wholly abolishing the rule established by this Court if no Constitutional provision were involved, but the Legislature could not modify the requirement of the Constitution that "all property, both real and personal, shall be taxed". Therefore, if the Act of 1939 is to be construed as authorizing an assessment against the

appellee association which was less than the true and actual value of all its property, it is to that extent unconstitutional. No unsurmountable difficulty arises from the anomaly of basing the assessment on liabilities rather than on assets, or property, of the association, provided, of course, that the total of all liabilities is included. In every system of accounting, assets and liabilites are always equal. In fact, the liability side of the ledger, or balance sheet, always conforms to the opposite, or assets, side, and must under all circumstances be an exact reflection of the amount of assets. Hence, what might be an absurdity in basing the assessment on liabilities disappears, the liabilities being exactly equivalent in amount to the assets, provided, of course, that all liabilities are included. But the statute, the decision of the court below, and the holding now of this Court, expressly utilize in the assessment only a part of the liabilities. This is the exact equivalent of taxing only a part of the property of the association, a thing which the Constitution forbids. If, on the other hand, the court had construed this statute to require the assessment to be based on all the liabilities (being the exact equivalent in amount of all the property) of the association, no Constitutional difficulty would be encountered. There would then be, however, other express and self-evident errors in the case by reason of the fact that both the trial and appellate courts have directly withdrawn a part of the liabilities from the data on which the assessment is based. The assessment itself then, rather than the statute, would be unconstitutional.

Another element in the case which is only a detail in the calculation of the assessment, seems, also, to require a modification of the assessment. The books of account and the balance sheet of the association show the ownership of real estate of the value of $417,524.17. The record discloses that this real estate is distributed throughout the counties of Hancock and Brooke. It is elemental that each parcel of this real estate must be assessed within the

taxing unit where it is located; it cannot be taxed in the City of Chester unless located within that City. Hence, regardless of any statute, the real estate outside the City of Chester must be taxed separately and in the geographical territory where it is located. Accordingly, it is imperative that real estate be deducted from the total of the association's property which is here being assessed in Chester, the situs of the association's office and place of business. The statute, however, (and it is followed by both the court below and this Court) provides that "a proportionate share of such *assessed value* shall be deducted in ascertaining the market value of such investment shares and investment accounts." It seems to me that, as a mere matter of simple accountancy, the whole value of the real éstate must be deducted from the total assets (or its liabilities, as in this case), and not the assessed value. The presence among the assets of the association of real estate to the amount of $417,524.17 automatically and of necessity increased its reserves and surplus by this exact amount. Since this real estate cannot be assessed in Chester it must be taken out absolutely, and when taken out, the reserves and surplus of the association are reduced automatically by exactly the amount of the book value of the real estate. A simple test would be to take from the assets the full value of the real estate and then to take from the surplus the assessed value of the property, which in this case is $278,150.00. The result will be that the assets and liabilities do not balance. No statute, no assessment, and no order of court can change this rule of mathematics or this principle of accountancy. When assets to the amount of $417,524.17 are taken out of the assets side of the account, the surplus or other reserves on the liability side are inevitably thereby reduced by precisely the same amount.

Another consideration makes this course even more imperative. Of the surplus and reserves proposed to be assessed, $417,524.17 represents real estate. If we deduct

from that sum only $278,150.00 then there remains in the surplus the sum of $139,374.17, which continues to represent, and exists only by reason of, real estate owned. It is no more possible to assess in Chester $139,374.17 of the company's real estate scattered over two counties, than to assess in Chester the full value of the real estate. Neither the full value of the real estate nor any part thereof can be assessed in the City of Chester unless the real estate is actually located therein. Therefore, for this reason alone, the full amount of the book value of the real estate must be deducted from the surplus and reserves in calculating the amount of assessment to be made in the City of Chester.

The necessity for this holding will appear at once if we take another illustration. Suppose that the association, instead of carrying its real estate at the value of $417,524.17, had actually carried it at $1.00 as is done by many financial concerns, without fraud or any reason for criticism. Then when this real estate has been assessed at $278,150.00, what amount should be deducted from the surplus and reserves? It is perfectly clear in the supposed case that the real estate has added to the surplus only the sum of $1.00. Yet, under the rule established by the statute and approved by this Court when the real estate is assessed elsewhere at $278,150.00, there should be a reduction of the surplus and reserves, not by $1.00, but by $278,150.00. The correct and only possible rule is that when real estate is removed from the company's assets, regardless of the price at which it should be assessed, it reduces the remaining assets and, therefore, the remaining surplus and reserves, by exactly the amount at which it was carried on the books. The assessment of the property, exclusive of the real estate should be, therefore, reduced by this exact amount. This principle alone requires a modification of the decree of the lower court and justifies, in my opinion, this dissent to the holding here.

RILEY, PRESIDENT, dissenting:

As noted in the majority opinion the ruling of this Court in *Charleston Federal Savings & Loan Association v. James, Tax Commissioner,* 120 W. Va. 781, 200 S. E. 845, declared that state and federal building and loan associations were corporations within the meaning of Code, 11-3-13 (dealing with the assessment of corporate property), and that their intangible and other personalty are subject to taxation. Within a few month thereafter, a statute (Acts of the Legislature, 1939, Chapter 118, Article 3, Section 1) was enacted by the Legislature which furnished a norm for the purpose of taxing building and loan associations and federal savings and loan associations. Significance must be attached to such legislation for, if taxation of intangible and other personalty was to be based upon the same standard applicable to other corporations, there was no requirement for legislative action since, under the pronouncement of this Court indicated above, that result had already been effected.

There is nothing equivocal about the guide provided by the Legislature for the assessment to be made against building and loan and federal savings and loan associations. The majority opinion states:

> "* * * if we were assessing these shares to the owner, as distinguished from the association, the price at which they could be sold would be their actual value; but when we assess the association, we assess all of its property, as under our constitution we must."

Such language is in direct contravention of the statute itself. It is difficult to understand the logic, legal justification, or equity in fixing two different assessments, when the same property is employed as the measure thereof, merely because of the identity of taxpayer. The statute may not employ a proper standard for assessment of the loan associations involved, but certainly the legislative directive for assessment of investment shares and

investment accounts cannot mean one thing when applied to shareholders and another when applied to loan institutions. The basis for the assessment standard is definitely erroneous for the investment shares and accounts are not assets of the association but are actually liabilities, representing the amount due investors. In other words, the property assessed actually belongs to the investors, yet the assessment is one against the association. The bulk of the investment undoubtedly is represented by promissory notes secured by realty deeds of trust, and a proper criterion for assessment of an association's intangible property would include an evaluation of such notes. Every lending agency must necessarily attach some risk of loss in every loan transaction which may be occasioned by innumerable circumstances tending to cause a fluctuation of values of the security behind the notes. It is for such probable loss that reserves are created. In Rosenthal and Jacoby, Cyclopedia of Federal Savings and Loan Associations, p. 208, it is stated:

> "Inspiring the original reserve requirements fixed for Federal savings and loan associations was a clear conception of the trustee character of these associations. It was recognized that they have, if possible, an even greater responsibility than other such trustees because funds invested with them are frequently not the surplus cash of well-to-do people but the sole protection of wage earners against disaster."

The majority of the Court considers such reserves as assets of the company. I should have no objection thereto if the premise of the assessment consisted of *other assets* of the company, but, as noted above, that is not the situation; and for the majority to say, as it does, that "that part of the statute which refers to market value is inapplicable to the case at bar", is simply deleting, by juridical statement, a factor which the Legislature has employed. Since the statute involves only assessment of

specified associations, when, may it be inquired, shall that part of the statute apply if not to the case at bar?

Nor am I able to agree with the statement in the majority opinion that the statutory directive that the assessor "in ascertaining the true and actual value of such capital as represented by such investment shares and investment accounts as aforesaid, the assessor shall take into consideration all earned reserves and undivided profits of any such association" manifests an intention to secure the assessment of the association's property, for, if such had been the intendment of the Legislature, it would have employed as a basis for assessing the associations the corporate property rather than the true and actual value of the investment shares and investment accounts. Referring to the language of the statute above quoted, the majority opinion states that "it is difficult to perceive what possible meaning, other than that relating to value, can be attributed to the language used."

Under Code, 11-3-14, shares of stock in a banking institution, national banking association or industrial loan company are assessed to the several holders of such stock. A comparison of that statute with the one under consideration here reveals such similarity of language that it is clear that what the Legislature sought to do was to measure the tax of a building and loan or federal savings and loan association by the true and actual value of the investment shares and investment accounts. In the case of banks and industrial loan companies the tax is paid by the stockholders, while in building and loan and federal savings and loan associations the tax is to be paid by the association. It is true that investment shares may be purchased at an association's office at par; but may it be said that because thereof, that represents the market value? The record discloses that in the case of Hancock County Federal Savings and Loan Association the most recent and the largest sale of shares of stock sold at ninety cents on the dollar. That shares of stock may be purchased at an association's office at par would

not be the motivating factor for a prudent investor to acquire with his funds the shares of a savings and loan association. Would not he know that the assets of the institution consisted in the main of negotiable notes secured by realty—a situation which is true in the instant case—and would he not be interested in ascertaining what reserves were maintained? In other words, to a prudent investor each loan of the association would represent a unit of risk and whether or not he could anticipate the return of his money invested on a one hundred per cent basis would depend upon the reserves maintained by the association. The reserves, established and maintained, sustain the par value of the shares and accounts of a building and loan association and a federal savings and loan association. Hence, it is clear that the Legislative intent in its enactment of Code, 11-3-14 (a), was to provide for an assessment against such associations based upon the real and actual value of investment shares and investment accounts represented by the market value thereof, but that the determination of such value must necessarily include a consideration of the earned reserves and undivided profits of any such association. Since the value of such association could never be actually determined until its business was totally and finally culminated—when it could be determined with exactitude whether each loan represented a profit or a loss—the reserves carried on an association's books could be naught but a book item to absorb losses, if and when such occurred. If the property of an association is to be assessed as the majority of the Court indicates, then the same rule of assessing intangibles generally in Hancock County should be applicable in the assessment of notes held by an association which, according to Kenneth Hill, County Assessor, is on the basis of fifty per cent of the face value of such notes.

I am unable to concur in the fortification of the Court's position which it in the majority opinion derives from the constitutional provisions relating to taxation. The

Court might well have considered whether the statute under consideration was violative of the basic law because it relieved property of the association from the burden of taxation, but even under the Court's decision the *assets* of the association are not assessed. There is no disagreement on my part that funds properly assessable should bear their share of the tax burden; but it seems that in this case to reach its result the Court does not only overlook the practical setup of building and loan associations and savings and loan associations, but denies the import of language used by the Legislature.

Therefore, I respectfully dissent.