STATE EX REL. JESSE LEE HARRIS

*v.*

SAM L. MACCORKLE, ASSESSOR OF
KANAWHA COUNTY, WEST VIRGINIA

(No. 12137)

Submitted January 10, 1962.   Decided February 20, 1962

*Paul M. Friedberg, Henry C. Bias, Jr.,* for relator.

*C. Donald Robertson,* Attorney General, *Andrew J. Goodwin,* Assistant Attorney General, *Charles M. Walker,* Prosecuting Attorney, for respondent.

*Spilman, Thomas, Battle & Klostermeyer, Wood Bouldin, Jr., W. Victor Ross,* for intervening respondents.

BERRY, JUDGE:

This is a proceeding in mandamus under the original jurisdiction of this Court by the petitioner, Jesse Lee Harris, a citizen and taxpayer of Kanawha County, West Virginia, against Sam L. MacCorkle, Assessor of Kanawha County, West Virginia, respondent, to compel the assessor to include in his assessment of savings and loan and building and loan associations

located in Kanawha County the value of their investment shares and investment share accounts, on the ground that the provisions of Code, 11-3-14-a, as amended, relied upon by the assessor in the assessment of these associations, are invalid, as conflicting with Article X, Section 1, of the Constitution of West Virginia.

On October 16, 1961, a rule was issued by this Court, returnable November 7, 1961, against the respondent, Sam L. MacCorkle, to show cause why a writ of mandamus should not be awarded against him as prayed for. On November 6, 1961, the respondent filed his answer to the petition, and on the return day of the rule the Empire Federal Savings and Loan Association, the Charleston Federal Savings and Loan Association, the First Federal Savings and Loan Association and the West Virginia Building and Loan Association appeared by counsel and presented a petition and motion to intervene as parties respondent in this proceeding, which motion was granted to said parties to intervene. Thereupon, the intervening respondents filed pleadings consisting of a motion to quash or dismiss the rule heretofore issued, a demurrer to the petition, and an answer to the petition. By agreement of counsel and leave of the Court, the case was continued to the January term of this Court and leave granted to the parties to introduce evidence by depositions, and by an agreed statement of facts or stipulation, at which time the case was argued by the parties and submitted to the Court for decision.

The deposition and stipulation filed in this case show the financial conditions of the building and loan associations in Kanawha County as compared with the industrial loan companies and commercial banks in Kanawha County, as well as the assessments made and taxes paid, and the ratio with regard to each; also, what the effect would be if assessments were made and taxes paid in the manner sought by the petitioner.

The evidence in this case indicates that the building and loan associations in Kanawha County at the pre-

sent time are assessed at a higher ratio of assessed value to net capital accounts than other institutions. The ratio for the state banks in Kanawha County is 51.73%, for the national banks 45.21% for the industrial loan companies 56.04%, and for the building and loan associations 72.27%. The evidence further shows that under the present basis the state banks in Kanawha County would pay an average tax of $3171.00, and with the investment shares or investment share accounts eliminated, the building and loan associations in Kanawha County would pay an average tax of $3988.00. However, if the investment shares or investment share accounts were included in the assessments for the building and loan associations, the average tax for such associations would be $57,421.00.

Building and loan associations have been operating in some form in this state since the formation of the state, and various statutes pertaining to such associations have been enacted. They came into prominence after 1900, and the Federal Savings and Loan Associations have become popular since the thirties, as a result of federal legislation, and by the authority of federal statutes are taxed in the same manner as state building and loan associations which are statutory corporations.

A distinguishing feature of these associations is that they are mutual organizations in which every person who borrows or invests money becomes a "member". A member who borrows money from the association has no equity to start with and pays periodical dues on his membership to build up his paid-up interest in the association. Other members invest their money or deposit it in one of the associations in what is known as a "savings account". These savings accounts are commonly called "investment shares or investment share accounts" and dividends are obtained from the associations on such savings accounts. The money so invested by these members is loaned to the members who wish to borrow from the associations for building purposes. The combined assets of the five

savings and loan and building and loan associations in Kanawha County, as of June 30, 1961, are approximately $31,000,000.00. About $28,000,000.00 of these combined assets consist of the deposits or investments of the members in investment shares or investment share accounts and is loaned or is available for loans to members who wish to borrow from the associations. The difference between the total assets and the amount of the savings accounts of about $3,000,000.00 constitutes the capital accounts consisting of the surplus, reserves, and undivided profits. Any member can withdraw upon notice what he has invested or deposited in the savings account, but if he owes the association he must settle such account upon withdrawal. The association can also require members to withdraw or retire from the association by giving them notice and refunding their savings accounts.

Before 1904 all corporations, with the exception of special types such as public utilities and public carriers, were assessed on a net value basis, that is, the indebtedness to others was allowed to be deducted from their capital before any assessment on such was made. After 1904 different methods were used in taxing corporations, banking institutions and building and loan associations. Real estate of corporations has always been separately assessed and deducted from the capital for assessment purposes. At the present time ordinary corporations are assessed only on certain constituent elements of their total wealth, and shares of stock in the corporation are not assessed to either the corporation or the individual stockholder.

Commercial banks at the present time, except for real estate, pay only *ad valorem* taxes on the assessed value of shares of stock in the corporation. The assessment is made to the individual stockholder, but paid by the bank, and the bank may recover the amount paid from the stockholders. The practical aspect of this method of assessment is that the value of the stock which is assessed is obtained from the amount of reserve, surplus, and undivided profits of the bank,

omitting its deposits. Commercial banks, therefore, pay taxes on the assessed value of net capital and recover such payments from their individual stockholders either directly or indirectly.

The method of assesment against building and loan associations in this state has varied from time to time. This Court held in the case of *Ohio Valley Building & Loan Asso'n v. County Court of Cabell County*, 42 W. Va. 818, 26 S. E. 203, decided in 1896, that building and loan associations should not be assessed with the capital stock, but that the members of the associations should be assessed with their investment shares or investment share accounts. This was the method of assessing building and loan associations in this state until 1938, and the only tax they paid was upon real estate owned by them. In 1938 this Court held in the case of *Charleston Federal Savings & Loan Association et al. v. Ernest K. James, Tax Commissioner, et al.*, 120 W. Va. 781, 200 S. E. 845, that, because of certain statutory changes and decided cases relating thereto, building and loan associations were statutory corporations, and their intangible and other personal property was subject to taxation. By virtue of this case, these associations were then assessed and taxed on the value of investment shares and investment share accounts.

In 1939 the legislature followed the reasoning of the *James* case and amended the statute relating to the taxation of building and loan associations by the passage of Section 14-a, Article 3 of Chapter 118, Acts of the Legislature, 1939, Regular Session, which, as amended, provided for the assessment of the value of investment shares and investment share accounts of such associations as capital. In the case of *In Re: Tax Assessments Against Hancock County Federal Savings and Loan Association*, 125 W. Va. 426, 25 S. E. 2d 543, this Court applied the 1939 statute and held that building and loan associations should be assessed on the value of the investment shares or in-

vestment share accounts, as well as on surplus, undivided profits, and reserves.

In 1959 the legislature amended the 1939 Act referred to herein and provided that investment shares and investment share accounts of building and loan associations should be deducted by the assessor in determining the true and actual value of the capital of such associations. This amended statute, Code, 11-3-14a reads in part as follows:

> "The capital of every building and loan association and federal savings and loan association shall include all of its assets and shall be assessed at its true and actual value according to the rules prescribed by this chapter, to such building and loan association or federal savings and loan association in the county, district and town where such association is located: Provided, however, that *investment shares and investment share accounts in such associations representing money withdrawable therefrom* are hereby defined as money for purposes of taxation under this section and, as such, shall not be taxed but *shall be deducted by the assessor in determining the true and actual value of the capital of any such association.* The real and actual value of such capital shall be ascertained according to the best information which the assessor may be able to obtain, whether from any return made by such association to any officer of this state, or the United States, or from answers to questions by the assessor, as hereinafter provided, or from other trustworthy sources." [Emphasis supplied].

It is the petitioner's contention that this statute exempts investment shares or investment share accounts from assessment and taxation, and is in violation of Article X, Section 1 and 1-a of the Constitution of West Virginia, and is therefore unconstitutional.

The pertinent part of Article X, Section 1 of the Constitution of West Virginia reads as follows:

> "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall

be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value; * * * ".

This Article and Section of the Constitution was amended by the voters of this State in 1958, at which time Section 1-a, which reads as follows, was added:

"Notwithstanding the provisions of the preceding section, bank deposits and money shall not be subject to *ad valorem* property taxation."

It is the contention of the respondents that mandamus does not lie and is not a proper remedy in this case, because it is not shown that the petitioner has sufficient interest, that the assessor has performed his duty and made assessments as required by law, but if mandamus does lie the petition is not sufficient in law, because Code, 11-3-14-a, as amended, is not unconstitutional or void but constitutes a valid exercise of the legislative power to direct by law the manner or method by which the property of building and loan associations is to be valued and assessed, all of which is properly raised by the written demurrer to the petition filed by the respondents herein.

Other questions are raised incidental hereto, but the disposition of this case does not require a detailed discussion of them.

Mandamus is the proper remedy to compel an assessor to assess for taxation omitted property legally liable for taxation. It lies on the relation of a proper public officer or of an individual taxpayer. 84 C.J.S., Taxation, §581-b; *State ex rel. Miller, Auditor v. Buchanan, Assessor,* 24 W. Va. 362; *State ex rel. Farr et al. v. Martin et al.,* 105 W. Va. 600, 143 S. E. 356; *Central Realty Company et al v. Martin, Assessor,* 126 W. Va. 915, 30 S. E. 2d 720. Therefore, the motion to dismiss the rule heretofore issued is overruled.

We now proceed to consider and ascertain whether the demurrer filed by the respondents to the petition is well taken.

954

The only question for determination in this proceeding is whether or not the assessor has omitted some property of the intervening respondents which is lawfully liable for assessment and taxation. Article X, Section 1, of the Constitution of West Virginia requires that all property, both personal and real, be taxed, subject to certain exceptions which are not involved in this case. However, the Constitution was amended in 1958 by adding Section 1-a which is involved here.

The amendment, Section 1-a, provides that bank deposits and money are not subject to *ad valorem* property taxation. The investment shares or investment share accounts that the petitioner insists should be assessed in the name of the building and loan associations for taxation are intangible personal property, and it is so admitted by the stipulation. It would be well to point out here that such property is already taxed in a converted form by virtue of its use by the association which loans the money it represents to members who erect structures such as houses that are taxable as real estate, and if taxed again as intangible personal property, this would, in effect, result in double taxation from an economic or practical standpoint, although not from a technical or prohibited standpoint. Though such double taxation is not constitutionally prohibited, it is frowned upon by the courts and should be done only by the specific direction of the legislature. Vol. 1, Fourth Edition, Cooley Taxation, Section 276; *State ex rel. Dillon v. Graybeal, Assessor,* 60 W. Va. 357, 55 S. E. 398; *George Washington Life Insurance Company v. Board of Review and Equalization of Kanawha County,* 113 W. Va. 664, 169 S. E. 532; *State ex rel. Wolfe v. Parmenter,* 50 Wash. 164, 96 P. 1047; *Shields et al. v. Williams,* 159 Tenn. 349, 19 S. W. 2d 261; *Board of Com'rs of Washington County v. Murray,* 71 Col. 522, 208 P. 472.

It is the contention of the petitioner that Code, 11-3-14-a, as amended, classifies investment shares or investment share accounts as money and exempts them from taxation, but that such investment shares or in-

vestment share accounts are not money, and therefore do not come within the provisions of Article X, Section 1-a of the Constitution; that statute, Code, 11-3-14-a, as amended, violates Article X, Section 1 and Section 1-a of the Constitution of West Virginia, and is therefore unconstitutional.

It is true that investment shares and investment share accounts, commonly called savings accounts with building and loan associations, are difficult to classify, because they are different from shares of stock in a corporation or commercial bank, although they have some similar attributes, such as voting powers, which, for all practical purposes in most instances are not used in such associations. Also, they are closely related to time deposits or savings deposits in commercial banks, although different in some technical aspects, and they represent money that can be withdrawn from the association upon notice or request. Regardless of the confusion as to the exact classification, it has been held in this state that such investment shares or investment share accounts which are paid up make the members creditors of the association and the association owes them the amount of money indicated by such investment share or investment share accounts. Such shares and share accounts constitute liability on the part of the association. *Daurelle v. Traders Federal Savings and Loan Association of Parkersburg, et al.,* 143 W. Va. 674, 104 S. E. 2d 320. However, it is not necessary for the decision in this case to classify investment shares or investment share accounts of building and loan associations as money or bank deposits in connection with the provisions of section 1-a of Article X of the Constitution of West Virginia.

The statute attacked by the petitioner as being unconstitutional merely gives as its reason for deducting such shares for the purpose of taxation that they represent money, and are defined as money. The statute in question clearly provides for a *method* or *mode of assessment* for the purpose of taxation, and the legislature, without question, has such power.

*Charleston & S. Bridge Co. v. Kanawha County Court,*
41 W. Va. 658, 24 S. E. 1002; *In Re: Tax Assessments
against Charleston Federal Savings & Loan Associa-
tion, First Federal Savings & Loan Association, West
Virginia Building and Loan Association and Empire
Savings & Loan Association,* 126 W. Va. 506, 30 S. E.
2d 513; *In Re: Tax Assessments against the National
Bank of West Virginia at Wheeling and the Morris
Plan Savings and Loan Company,* 137 W. Va. 673,
73 S. E. 2d 655; *In Re: Assessment of Kanawha Val-
ley Bank,* 144 W. Va. 346, 109 S. E. 2d 649.

It makes no difference what reason the legislature
gives in providing for the method of assessment for
taxation if it is clear that it pertains to a method or
mode to guide the assessor, which the statute in ques-
tion clearly does by stating that investment shares or
investment share accounts shall be deducted by the
assessor in determining the value of the capital of
such associations. 84 C.J.S., Taxation, §227; *The
State Road Commission of West Virginia, a Corpora-
tion v. The County Court of Kanawha County, a Cor-
poration,* 112 W. Va. 98, 163 S. E. 815.

The statute in question, Code, 11-3-14-a, as amended,
does not exempt any property of building and loan
associations from taxation, but merely authorizes the
deduction of the investment account property in ques-
tion for taxation purposes, providing a net method,
which has always been authorized under the laws of
this state, instead of by a gross method. *George Wash-
ington Life Insurance Company v. Board of Review
and Equalization of Kanawha County,* 113 W. Va.
664, 169 S. E. 532; *Charleston Federal Savings & Loan
Association et al. v. Alderson, State Tax Commissioner,*
324 U.S. 182, 89 L.Ed. 857.

The entire theory of the petitioner is based on the
proposition that the statute in question, Code, 11-3-14-a,
as amended, exempts investment shares or investment
share accounts from taxation, and that such exemption
is in violation of Article X, Section 1 and Section 1-a

of the Constitution of West Virginia. The statute in question is applicable only to assessments of building and loan associations. It is undisputed that the investment shares or investment share accounts are property of and owned by the individual members of such associations, and there is no contention that such shares are exempt as to the individual holders, none of whom are parties to this proceeding. Therefore, it is unnecessary to discuss or decide this question, and it is merely mentioned at this point to show that the allegations in the petition are not supported by the statement that such shares are exempt from assessment and taxation under Code, 11-3-14-a, as amended. Then, too, if assessments were made against the intervening respondents as desired by the petitioner, from the evidence and stipulation contained in this case, that would raise a question of equality and uniformity, which, of course, we do not pass on, because it is not in issue, nor necessary to be raised in this proceeding; but such assessment would appear to violate, as compared with other financial institutions, the equal and uniform part of Article X, Section 1, of the Constitution of West Virginia. See *In Re: Assessment of Kanawha Valley Bank,* 144 W. Va. 346, 109 S. E. 2d 649.

For the reasons stated herein, we are of the opinion that the petition filed in this proceeding fails to state a cause of action against the respondents, and it is clear from the facts pertaining to this case that the statute in question, Code, 11-3-14-a, as amended, relates only to the method or mode of assessment for taxation of intangible property in connection with the intervening respondents, and that the legislature clearly has the power to provide for such method.

Therefore, the writ will be denied, and the rule heretofore issued will be discharged.

*Writ denied.*